FRED GOODMAN v. WENCO FOODS, INC., D/B/A WENDY'S OLD FASHIONED
HAMBURGERS AND GREENSBORO MEAT SUPPLY COMPANY, INC.[1]

No. 484A90

(Filed 18 December 1992)

1. **Food § 2 (NCI3d); Uniform Commercial Code § 13 (NCI3d) —
restaurant — sale of food — merchant — implied warranty of
merchantability**

Admissions by defendant Wendy's in its answer that it
is a seller of food intended for human consumption, that it
is engaged in and operates fast food restaurants, and that
one of the products it sells is hamburgers containing meat
patties made of beef products established that it is a mer-

---

1. This caption, which sets forth the state of this case as argued before the
Court of Appeals, differs somewhat from the caption on the record. The captions
on the parties' briefs before the Court of Appeals and before this Court are incon-
sistent: Wenco Foods, Inc., is referred to both as Wenco's Foods, Inc., and as
Wendy's Foods, Inc.; Wenco Management, Inc., occasionally appears without indica-
tion of incorporation. Plaintiff took voluntary dismissals with prejudice as to defend-
ants Wenco Management, Inc., and Wendy's International, Inc. That leaves only
those defendants indicated in the record as having been duly served with summonses —
Wenco Foods, Inc., d/b/a Wendy's Old Fashioned Hamburgers, and Greensboro
Meat Supply Company — to be retained as defendants in the caption for this
appeal.

1

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

chant and the foods it sells are subject to the implied warranty of merchantability.

**Am Jur 2d, Food §§ 84, 94.**

**Implied warranty of fitness by one serving food. 7 ALR2d 1027.**

**2. Food § 2 (NCI3d) — natural substance in food — cause of injury — implied warranty of merchantability**

When a substance in food causes injury to the consumer of the food, it is not a bar to recovery against the seller on the basis of implied warranty of merchantability that the substance was "natural" to the food provided the substance is of such a size, quality or quantity, or the food has been so processed, or both, that the presence of the substance should not reasonably have been anticipated by the consumer. The decision of *Adams v. Tea Co.*, 251 N.C. 565, should no longer be considered as authoritative insofar as it holds that there can never be recovery on the basis of implied warranty for injury caused by a substance in food that is natural to the food.

**Am Jur 2d, Food §§ 84, 94, 98; Products Liability § 227.**

**Liability for injury or death allegedly caused by food product containing object related to, but not intended to be present in, product. 2 ALR5th 189.**

**3. Food § 2 (NCI3d) — injury from substance in food — warranty of merchantability — compliance with government standards**

Proof of compliance with government food standards and regulations is no bar to recovery on a breach of warranty theory for an injury from a substance in food. Although such evidence may be pertinent to the issue of the existence of a breach of any warranty, it is not conclusive.

**Am Jur 2d, Food §§ 63-72.**

**4. Food § 2 (NCI3d) — injury from bone in hamburger — breach of warranty of merchantability — sufficiency of evidence**

Plaintiff's evidence was sufficient for the jury in an action against defendant Wendy's for breach of the warranty of merchantability of a hamburger sandwich where it tended to show that plaintiff was injured when he bit down on a triangular, one-half inch, inflexible bone shaving in the meat of a ham-

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

burger sandwich purchased from a Wendy's restaurant. The jury could reasonably determine the meat to be of such a nature, i.e., hamburger, and the bone in the meat of such a size that a consumer of the meat should not reasonably have anticipated the bone's presence.

**Am Jur 2d, Food §§ 94, 98, 104; Products Liability § 227.**

5. **Rules of Civil Procedure § 50 (NCI3d) — negligence action — directed verdict**

Directed verdict in a negligence action should be granted with caution because, ordinarily, it is for the jury to determine whether the applicable standard of care has been breached. But when there is no evidence of an essential element of plaintiff's claim, directed verdict is proper.

**Am Jur 2d, Negligence §§ 20-23.**

6. **Food, Drugs, and Cosmetics § 8 (NCI4th) — adulterated food — sale by restaurateur — beef bone in hamburger — standard of care**

The N.C. Pure Food, Drug and Cosmetic Act imposes upon a restaurateur the general duty not to sell adulterated food, which might include beef bone in hamburger, if the quantity of the bone "ordinarily render[ed] it injurious to health." N.C.G.S. § 106-129. However, the Act provides no standard by which to comply with that duty, and such a standard of care would presumably be imposed by state regulations, promulgated pursuant to the Act, that specify the tolerance for bone fragments in ground meat.

**Am Jur 2d, Food §§ 20-22, 35; Products Liability §§ 226, 227.**

7. **Food § 2 (NCI3d) — injury from bone fragment in hamburger — negligence of restaurateur — insufficient evidence for jury**

A directed verdict was properly entered for defendant Wendy's on the issue of its negligence in selling plaintiff a hamburger containing a bone fragment where plaintiff's evidence tended to show that he was injured when he bit down on a triangular, one-half inch, inflexible bone shaving in a hamburger purchased at a Wendy's restaurant, and plaintiff's evidence also showed that Wendy's took precautions to ensure that meat used in its hamburgers was reliably free of inju-

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

rious bone fragments in that its grinding specifications stated that "acceptable" preparation of its meat was to chop beef free of "all bones" and force it through a one-eighth inch plate; the grinding process for hamburger supplied to Wendy's forces the chopped meat through two plates with progressively smaller holes; and a "bone collector" device on the processor's grinding machines, not required by N.C. Department of Agriculture or U.S.D.A. regulations, removes much of the bone and gristle remaining after the grinding process. The presence of a small bone fragment, standing alone, creates no inference that Wendy's was negligent in its inspection of the hamburger it served to plaintiff.

**Am Jur 2d, Food §§ 35, 89, 94, 104; Products Liability § 227.**

**Liability for injury or death allegedly caused by food product containing object related to, but not intended to be present in, product. 2 ALR5th 189.**

8. **Rules of Civil Procedure § 56.2 (NCI3d) — defendant's motion for summary judgment — burden of proof**

A defendant moving for summary judgment must first meet the burden of proving that an essential element of plaintiff's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense. Only after a moving party meets this burden must the nonmovant produce a forecast of evidence demonstrating that the plaintiff will be able to make out a prima facie case at trial. At this second stage it is not incumbent upon a plaintiff to present all the evidence available in his favor, but only that necessary to rebut the defendant's showing.

**Am Jur 2d, Summary Judgment § 15.**

9. **Food § ·2 (NCI3d) — bone fragment in hamburger — meat supplier — breach of warranty of merchantability — summary judgment improper**

The trial court erred in entering summary judgment for defendant meat supplier in plaintiff's action for breach of the warranty of merchantability of ground beef allegedly supplied by defendant to a Wendy's restaurant where plaintiff's complaint and deposition stated that he had eaten approximately one half of a hamburger purchased at a Wendy's restaurant

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

when he bit into a piece of bone that was "in the meat" and broke off pieces of two teeth, that the bone appeared to be a meat bone and most of the substance in plaintiff's mouth at the time of the injury was meat, and that he incurred medical and dental bills as a result thereof, and defendant admitted in its answer that it was a supplier of ground beef to the Wendy's restaurant where plaintiff was injured and that some of its meat products were used to make hamburger patties. Plaintiff's deposition testimony that he had no direct proof that the bone came from the meat or that the meat came from defendant supplier did not require summary judgment for the defendant since the sources of the meat and bone could be proven at trial by inferences from other facts.

**Am Jur 2d, Food § 98; Products Liability § 227; Summary Judgment §§ 6, 27.**

**Liability for injury or death allegedly caused by food product containing object related to, but not intended to be present in, product. 2 ALR5th 189.**

10. **Sales § 22.1 (NCI3d) — bone fragment in hamburger — meat supplier — warranty of merchantability — defense under Products Liability Act — summary judgment improper**

In plaintiff's action to recover for injuries received when he bit down on a bone fragment in a hamburger purchased at a Wendy's restaurant, defendant meat supplier was not entitled to summary judgment on plaintiff's claim for breach of warranty of merchantability of ground beef it allegedly supplied to the restaurant on the ground that the action was barred by two sections of the Products Liability Act, N.C.G.S. §§ 99B-3 and 99B-4, where there was no forecast of evidence that any alteration or modification in the ground beef after the product left defendant's control was not in accord with its instructions or specifications and that such a modification was the cause of the alleged defect resulting in plaintiff's injuries.

**Am Jur 2d, Food §§ 95, 98; Products Liability §§ 226, 227; Summary Judgment §§ 6, 27.**

**Liability for injury or death allegedly caused by food product containing object related to, but not intended to be present in, product. 2 ALR5th 189.**

11. **Food § 2 (NCI3d); Sales § 22.1 (NCI3d)— bone fragment in hamburger — negligence by meat supplier — summary judgment improper**

The trial court erred in entering summary judgment for defendant meat supplier on plaintiff's claim for negligence in supplying ground beef containing a bone fragment to a Wendy's restaurant where plaintiff's complaint and deposition stated that a bone fragment in the meat of a hamburger purchased at the Wendy's restaurant injured him and resulted in monetary damages; defendant admitted in its answer that it was a supplier of ground beef to the Wendy's restaurant where plaintiff was injured and that some of its meat products were used by Wendy's to make hamburger patties; and defendant did not meet its initial burden of showing that plaintiff could not prove defendant's negligence at trial by presenting evidence at the summary judgment hearing or pointing to evidence already adduced during discovery to establish that it had exercised due care in the preparation of its meat products.

Am Jur 2d, Food §§ 89, 95, 98; Products Liability §§ 226, 227; Summary Judgment §§ 6, 27.

Liability for injury or death allegedly caused by food product containing object related to, but not intended to be present in, product. 2 ALR5th 189.

Justice LAKE did not participate in the consideration or decision of this case.

On appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 100 N.C. App. 108, 394 S.E.2d 832 (1990), reversing in part order entered on 23 May 1989 by Ellis, J., directing verdict in favor of defendant Wenco Foods, Inc., and reversing in part order entered on 21 December 1987 by Brannon, J., granting summary judgment in favor of defendant Greensboro Meat Supply Co., Inc. Heard in the Supreme Court 12 February 1991.

*The Law Offices of Brenton D. Adams, by Brenton D. Adams and C. Chris Webster, for plaintiff-appellant and -appellee.*

*Faison, Fletcher, Barber & Gillespie, by O. William Faison, Reginald B. Gillespie, Jr., and Cynthia T. Shriner, for defendant-appellant and -appellee Wenco Foods, Inc., d/b/a Wendy's Old Fashioned Hamburgers.*

## GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Sanford W. Thompson, IV, and Kari Lynn Russwurm, for defendant-appellant and -appellee Greensboro Meat Supply Company.*

EXUM, Chief Justice.

The plaintiff was injured when he bit down on a small bone in a hamburger sandwich purchased at Wendy's Old Fashioned Hamburgers. He brought actions in negligence and breach of the implied warranty of merchantability against Wenco Management, Wenco Foods, Inc., d/b/a Wendy's Old Fashioned Hamburgers [hereinafter Wendy's], and against Greensboro Meat Supply Co. [hereinafter GMSC], which allegedly supplied the hamburger meat for that Wendy's restaurant.

The trial court granted summary judgment on both claims for defendant GMSC, but allowed plaintiff's action against Wendy's to go to trial. At trial, the trial court allowed Wendy's' motion for directed verdict on both claims at the close of plaintiff's evidence.

In its majority opinion as reported the Court of Appeals reversed both the directed verdict for Wendy's and summary judgment for GMSC. A majority of the Court of Appeals panel (Judges Arnold and Greene) concluded that plaintiff's implied warranty of merchantability claims should have survived Wendy's' motion for a directed verdict and GMSC's motion for summary judgment. Only Judge Greene, writing the principal opinion for the panel, concluded that the negligence claims should also have survived these motions by defendants. Only Chief Judge Hedrick concluded that the trial court correctly entered summary judgment for GMSC and directed verdict for Wendy's on both the warranty and negligence claims.

We affirm the Court of Appeals' decision affirming the directed verdict on plaintiff's negligence claim against Wendy's. We affirm the Court of Appeals' decision reversing directed verdict for Wendy's and summary judgment for GMSC on plaintiff's breach of the implied warranty of merchantability claims. We conclude, however, that the majority of the Court of Appeals erroneously affirmed summary judgment for GMSC as to plaintiff's negligence claim; we therefore reverse this decision. The result is that the case is remanded for trial on plaintiff's implied warranty of merchantability claims against both defendants and on plaintiff's negligence claim against GMSC.

**GOODMAN v. WENCO FOODS, INC.**

[333 N.C. 1 (1992)]

## I. WENDY'S

At trial, only plaintiff offered evidence. Plaintiff testified that on 28 October 1983, he and an employee stopped for lunch at the Hillsborough Wendy's restaurant. Plaintiff ordered a double hamburger and had eaten about half of it when he bit down and felt immediate pain in his lower jaw. Plaintiff took from his mouth the hamburger, a piece of bone that did not come from his mouth, and pieces of teeth. Plaintiff described the piece of bone as triangular, one-sixteenth- to one-quarter-inch thick, one-half-inch long and tapering from one-quarter inch at its base to a point. He indicated that, as far as he knew, the bone was a cow bone. It was about the size of his small fingernail, thick on one side, shaved down to a point on the other, and too small to be flexible. Plaintiff stated the bite containing the bone was mostly meat and that the bone had been in the meat, but he admitted it was possible the bone could have been in any of the condiments or in the bun. Plaintiff's luncheon companion testified he witnessed the incident and saw plaintiff show the bone to the restaurant manager. He noted plaintiff missed at least one day of work. Plaintiff's wife testified as to the extent and intensity of her husband's pain resulting from the broken teeth, and plaintiff's dentist and endodontist testified as to the dental damage, their work on his teeth over several months, and the cost of their services.

Plaintiff also introduced into evidence a copy of Wendy's' grinding specifications for its meat suppliers, which require that chopped meat be "[f]ree from bone or cartilage in excess of 1/8 inch in any dimension that is ossified" prior to grinding and packing.

The owner of GMSC, Jake Leggett, called as a witness by plaintiff, testified that in 1983, and at all times relevant to this incident, GMSC supplied all the ground beef to the Wendy's restaurant in Hillsborough. The beef was certified by the United States Department of Agriculture. Leggett submitted as an exhibit U.S.D.A. boneless meat inspection criteria, which included a chart describing criteria for when bone fragments in meat were considered a defect in the product. The chart indicated that bone fragments less than one-and-one-half inches in their greatest dimensions were "minor" defects. Bone fragments less than three-quarters of an inch in length and less than one-quarter inch wide which are flexible or which crumble easily are considered "insignificant."

More than five minor fragments in a sample unit of thirty pounds is considered a "major" defect.

According to Leggett, meat is inspected prior to grinding. During 1983, a state meat inspector was on site at GMSC at all times to inspect, grade, and approve or reject each lot of meat prior to grinding. State supervisory personnel periodically spot-checked behind the inspectors. Inspectors from Wendy's also randomly inspected GMSC and were "very meticulous and strict" in enforcing Wendy's' own regulations. Random inspection, sometimes occurring several times a week, ensured that GMSC effectively enforced these regulations.

In addition, Leggett described the grinding process required by Wendy's regulations and used by GMSC. By this process chopped meat is forced through two plates with progressively smaller holes. A "bone collector" device on GMSC's grinding machine removes much of the bone and gristle remaining after the grinding process. The meat is not inspected after grinding, but is packed in twenty-pound bags, vacuum sealed, and placed in a cooler.

A. IMPLIED WARRANTY OF MERCHANTABILITY

A motion for a directed verdict presents the question whether the evidence is sufficient to carry the case to the jury.

> In passing on this motion, the trial judge must consider the evidence in the light most favorable to the non-movant, and conflicts in the evidence together with inferences which may be drawn from it must be resolved in favor of the non-movant. The motion may be granted only if the evidence is insufficient to justify a verdict for the non-movant as a matter of law.

*Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979).

The implied warranty of merchantability as codified under the Uniform Commercial Code, N.C.G.S. § 25-2-314 (1986), accords with prior North Carolina law. *Performance Motors, Inc. v. Allen*, 280 N.C. 385, 394, 186 S.E.2d 161, 166 (1972). *See generally*, Jeanne Owen, *Note. Sales—Warranties—Implied in Sale of Food for Human Consumption*, 32 N.C. L. Rev. 351, 354 (1954). The statute states, in pertinent part:

> Unless excluded or modified, . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

[T]he serving of food or drink to be consumed either on the premises or elsewhere is a sale.

N.C.G.S. § 25-2-314(1) (1986). Goods, to be merchantable, "must be at least such as . . . are fit for the ordinary purposes for which such goods are used." N.C.G.S. § 25-2-314(2), (2)(c) (1986).

To prove a breach of implied warranty of merchantability under N.C.G.S. § 25-2-314, "a plaintiff must prove, first[,] that the goods bought and sold were subject to an implied warranty of merchantability; second, that the goods did not comply with the warranty in that the goods were defective at the time of the sale; third, that his injury was due to the defective nature of the goods; and fourth, that damages were suffered as a result. The burden is upon the purchaser to establish a breach by the seller of the warranty of merchantability by showing that a defect existed at the time of the sale."

*Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 301, 354 S.E.2d 495, 497 (1987) (quoting *Cockerham v. Ward*, 44 N.C. App. 615, 624-25, 262 S.E.2d 651, 658, *disc. rev. denied*, 300 N.C. 195, 269 S.E.2d 622 (1980)) (citations omitted).

[1] Wendy's admitted in its answer that it is a seller of food intended for human consumption, that it is engaged in and operates fast food restaurants, including the Hillsborough restaurant where plaintiff was allegedly injured, and that one of the products it sells is hamburgers containing meat patties made of beef products. The Court of Appeals correctly concluded these admissions establish that Wendy's is a merchant and that the foods it sells are subject to the implied warranty of merchantability.

Plaintiff's evidence, viewed in the light most favorable to him, tended to show that his broken teeth and resulting physical and financial damage were caused by biting down on a bone in a hamburger purchased from Wendy's restaurant. Whether the bone in the hamburger caused the product to be unfit for consumption, *i.e.*, "defective," is the keystone to resolving whether plaintiff's claims for breach of implied warranty should have survived Wendy's' motion for a directed verdict.

Wendy's, relying on this Court's decision in *Adams v. Tea Co.*, 251 N.C. 565, 112 S.E.2d 92 (1960), contends that plaintiff's claim for breach of implied warranty must fail because the bone was "natural" to the foodstuff. In *Adams* the plaintiff bit down

**GOODMAN v. WENCO FOODS, INC.**

[333 N.C. 1 (1992)]

on a piece of crystallized corn in his spoonful of cornflakes, cracking his eyetooth, and brought an action for breach of implied warranty against the retailer. This Court held that nonsuit (the precursor of a directed verdict) had been properly entered upon plaintiff's evidence, "where the substance causing the injury [was] natural to the corn flakes, and not a foreign substance, and where a consumer of the product might be expected to anticipate the presence of the substance in the food." 251 N.C. at 572, 112 S.E.2d at 95.

The Court of Appeals construed this language as establishing a two-part inquiry: "(1) whether the substance causing the injury is natural or foreign; and (2) if natural, whether 'a consumer of the product might be expected to anticipate the presence of this substance in the food.'" 100 N.C. App. at 114, 394 S.E.2d at 835 (quoting *Adams v. Tea Co.*, 251 N.C. at 572, 112 S.E.2d at 98). *See also Evart v. Suli*, 211 Cal. App. 3d 605, 611 n.4, 259 Cal. Rptr. 535, 539 n.4 (1989) (reading *Mix v. Ingersoll Candy Co.*, 6 Cal. 2d 674, 59 P.2d 144 (1936), as stating similar two-part test and *Adams* as adopting second prong).

The question is whether by this language the *Adams* Court meant to adopt a two-prong test for liability under which a plaintiff could prevail on either prong, or whether it was the Court's intent to adopt the rule that whenever a substance causing injury is natural to the food itself there can be no liability because every consumer should anticipate and be on guard against the presence of such a substance. For the reasons that follow, we conclude the *Adams* Court took the latter approach.

The Court in *Adams* surveyed a number of cases from other jurisdictions in which substances "natural" to the food had caused injury. The Court regarded as anomalous the rejection of the "foreign-natural" distinction in *Bonenberger v. Pittsburgh Mercantile Co.*, 345 Pa. 559, 28 A.2d 913 (1942), in which the court declined to say "as a matter of law" that a can of oysters containing a quarter-sized piece of shell "was reasonably fit for human consumption." *Id.* at 563, 28 A.2d at 915. The Court in *Adams* appeared to join what was then a majority of jurisdictions which espoused the view that a substance "natural" to the injurious food cannot be a "defect" in the food so as to cause the seller of the food to be liable.

No case has been found . . . holding that because an article has retained a portion of itself that was intended to be extracted . . . the product has thereby been rendered unwhole-

**GOODMAN v. WENCO FOODS, INC.**

[333 N.C. 1 (1992)]

some and unfit for human consumption. Only when the courts have found extraneous, foreign matter to be present have they held defendant liable for breach of warranty, in either tort or trespass.

251 N.C. at 571, 112 S.E.2d at 97 (quoting *Recent Cases: Sales— Foods—Implied Warranties*, 17 Temple U.L.Q. 203, 204 (1942-43) ).

In *Mix v. Ingersoll Candy Co.*, 6 Cal. 2d 674, 59 P.2d 144 (1936), quoted copiously and relied upon in *Adams*, the California Supreme Court observed the statutory requisite that food be "reasonably" fit for its purpose and opined,

in certain instances a deviation from perfection, particularly if it is *of such a nature as in common knowledge could be reasonably anticipated and guarded against by the consumer*, may not be such a defect as to result in the food being not reasonably fit for human consumption.

*Id.* at 681, 59 P.2d at 147-48, *quoted in Adams v. Tea Co.*, 251 N.C. at 567-68, 112 S.E.2d at 96 (emphasis added).

In *Adams* the Court noted that, at the time, no court except the Pennsylvania Court in *Bonenberger* had extended liability based on implied warranty to a restaurateur when the substance causing injury was natural to the food served. According to the *Adams* Court's research, in all other existing cases in which the food was found not to be reasonably fit for human consumption, it was by reason of contamination by a foreign substance or the food's own noxious condition. In contrast, "[b]ones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to be on his guard and anticipate against such bones." *Adams v. Tea Co.*, 251 N.C. at 568, 112 S.E.2d at 95 (quoting *Mix v. Ingersoll Candy Co.*, 6 Cal. 2d at 682, 59 P.2d at 148).

The Court in *Adams* restated numerous holdings in which courts exercising the "foreign-natural" test articulated in *Mix* held "natural" defects in foods do not violate the restaurateur's implied warranty. In virtually every case[2] approval of the "foreign-natural"

2. One exception, *Silva v. F.W. Woolworth Co.*, 28 Cal. App. 2d 649, 83 P.2d 76 (Ct. App. 1938), exemplifies an extreme to which the "foreign/natural" test has been put. In *Silva* the plaintiff swallowed a turkey bone that had been hidden in the dressing served with the turkey. The court, "look[ing] upon the service

test coincided with the courts' recognition of consumer expectations as the foundation of the test. In other words, if a substance causing injury was "natural" to the food being served, the consumer ought reasonably to anticipate its presence and could not hold the server liable for any damages it caused. The court in *Shapiro v. Hotel Statler Corp.*, 132 F. Supp. 891, 893 (S.D. Cal. 1955), quoted the holding by the California Supreme Court in *Mix* that "bones which are natural to type of fish served are not a 'foreign substance,' and a customer who eats such food *ought to anticipate and guard against* the presence of such bones." *Adams v. Tea Co.*, 251 N.C. at 569, 112 S.E.2d at 96 (emphasis added). "One who eats pork chops, or the favorite dish of spareribs and sauerkraut, or the type of meat that bones are natural to, *ought to anticipate and be on his guard against* the presence of bone, which he knows will be there." *Brown v. Nebiker*, 299 Iowa 1223, 1234, 296 N.W. 366, 371 (1941), *quoted in Adams v. Tea Co.*, 251 N.C. at 570, 112 S.E.2d at 96 (emphasis added). The Court approved the holding in a negligence case, *Lamb v. Hill*, 112 Cal. App. 2d 41, 245 P.2d 316 (1952), that "customer was *not entitled to expect* an entirely boneless chicken pie in every instance." *Adams v. Tea Co.*, 251 N.C. at 569, 112 S.E.2d at 95 (emphasis added).

Thus *Adams*, which said there was to be no liability in implied warranty whenever the injurious substance was natural to the food because the consumer should *reasonably expect* such substances to be present, came to be regarded as a case exemplifying the "foreign-natural" distinction in implied warranty actions. *See, e.g.*, Jane M. Draper, Annotation, *Liability for Injury or Death Allegedly Caused by Food Product Containing Object Related to, but not Intended to be Present in Product*, 2 A.L.R. 5th 189, 208 (1992); *Hochberg v. O'Donnell's Restaurant*, 272 A.2d 846, 848 n.3 (D.C. 1971); *Zabner v. Howard Johnson's, Inc.*, 201 So. 2d 824, 826 (Fla. 1967); *Musso v. Picadilly Cafeterias, Inc.*, 178 So. 2d 421, *writ. denied*, 248 La. 468, 179 So. 2d 641 (1965); *Williams v. Braum Ice Cream Stores, Inc.*, 534 P.2d 700, 701 (Okla. 1974); *Finocchiaro v. Ward Baking Co.*, 104 R.I. 5, 12 n.3, 241 A.2d 619, 623 n.3 (1968); *Betehia v. Cape Cod Corp.*, 101 Wis. 2d 323, 328, 103 N.W.2d 64, 67 (1960). *Adams* thus articulates one branch of a dichotomy

---

as one dish as delivered, in which there was no substance not 'natural' to the type of meat served," denied plaintiff recovery as a matter of law. *Id.* at 651, 83 P.2d at 77.

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

among jurisdictions as to whether a substance "natural" to a product may be a "defect" in the product: Some courts hold simply that any non-foreign substance — such as shell in oyster stew or a pit in a cherry pie — will not support a claim for breach of implied warranty of merchantability because the possible presence of the substance should have been anticipated in every instance by the consumer; other courts hold that whether such a substance is a "defect" depends upon the "reasonable expectations" of the consumer. *See generally* Donald A. Anderson, *3 Anderson on the Uniform Commercial Code* §§ 2-314:184, 2-314:185 (1983).

In an earlier case the Court of Appeals seemed reluctant to read *Adams* (as we now read it) to preclude recovery whenever the substance causing injury is natural to the food being consumed. *Coffer v. Standard Brands*, 30 N.C. App. 134, 266 S.E.2d 534 (1976). In *Coffer* a breach of implied warranty claim was brought by a plaintiff whose tooth allegedly broke on a piece of filbert shell in a jar of mixed nuts. The Court of Appeals cited *Adams* as supporting the doctrine "well recognized in this and other jurisdictions passing on the question that the presence of natural impurities is no basis for liability," *id.* at 141, 226 S.E.2d at 538, and held that "[s]ince the impurity complained of in this case was a natural incident of the goods in question, . . . there was no breach of the implied warranty of merchantability." 30 N.C. App. at 142, 266 S.E.2d at 539. Nevertheless, the court buttressed this conclusion with reasoning that seems by implication to be grounded in part on the "reasonable expectation" doctrine. The court found the food's compliance with federal and state food quality standards "highly persuasive in establishing merchantability under G.S. 25-2-314(2)(a)," 30 N.C. App. at 140, 226 S.E.2d at 538. The court also noted that figures for the incidence of peanut shells in units of shelled peanuts indicated that "there is some tolerance in the trade for unshelled filberts, as well." *Id.* In addition, the court found "instructive" N.C.G.S. § 106-129, under which food is not deemed "adulterated" if "any poisonous or deleterious substance . . . is not an added substance . . . [provided] the *quantity* of such substance . . . does not ordinarily render it injurious to health." *Id.* at 140-141, 226 S.E.2d at 538 (quoting N.C.G.S. § 106-129 (1988) ) (emphasis added). The court's reliance on this statute suggests the court's belief that recovery for injury caused by a substance natural to the food may depend in part upon the quantity, or size, of the substance.

In the case before us the Court of Appeals read *Adams* as permitting recovery on implied warranty for an injury-causing substance natural to the food if presence of the substance was nevertheless not reasonably to be anticipated by the consumer.

[2] While we disagree with this reading of *Adams* by the Court of Appeals, we think it is time to reexamine the *Adams* holding. We conclude that *Adams* should no longer be considered authoritative insofar as it holds there can never be recovery on the basis of implied warranty for injury caused by a substance in food that is natural to food. We think the modern and better view is that there may be recovery, notwithstanding the injury-causing substance's naturalness to the food, if because of the way in which the food was processed or the nature, size or quantity of the substance, or both, a consumer should not reasonably have anticipated the substance's presence. This, essentially, is the test adopted below by the Court of Appeals.

"Naturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served." *Betehia v. Cape Cod Corp.*, 101 Wis. 2d 323, 328, 103 N.W.2d 64, 67. *See also Zabner v. Howard Johnson's, Inc.*, 201 So. 2d 824, 826.

> It is not the fact that a defect is a natural one which is important to this inquiry, but the fact that the ordinary consumer would expect that he might encounter it, and thus he would normally take his own precautions. A package of ground meat is not expected to be consumed from the sealed package as a bottle of soda water or milk, but is expected to be processed or otherwise altered before consumption by the purchaser.

*Loyacano v. Continental Insurance Co.*, 283 So. 2d 302, 305 (La. App. 1973), *quoted in Matthews v. Campbell Soup Co.*, 380 F. Supp. 1061, 1065 (S.D. Tex. 1974). "Surely it is within the expectation of the consumer to find a bone in a T-bone steak; but just as certainly it is reasonable for a consumer not to expect to find a bone in a package of hamburger meat." *Morrison's Cafeteria v. Haddox*, 431 So. 2d 975, 978 (Ala. 1983).

We thus hold that when a substance in food causes injury to a consumer of the food, it is not a bar to recovery against the seller that the substance was "natural" to the food, provided

the substance is of such a size, quality or quantity, or the food has been so processed, or both, that the substance's presence should not reasonably have been anticipated by the consumer.

A triangular, one-half-inch, inflexible bone shaving is indubitably "inherent" in or "natural" to a cut of beef, but whether it is so "natural" to hamburger as to put a consumer on his guard—whether it "is to be reasonably expected by the consumer"—is, in most cases, a question for the jury. *Betehia v. Cape Cod Corp.*, 101 Wis. 2d at 332, 103 N.W.2d at 69. "We are not requiring that the respondents' hamburgers be perfect, only that they be fit for their intended purpose. It is difficult to conceive of how a consumer might guard against the type of injury present here, short of removing the hamburger from its bun, breaking it apart and inspecting its small components. . . . [W]e doubt that any hamburger manufacturer seriously expects consumers to go to such lengths, especially since a hamburger sandwich is meant to be eaten out of hand, without cutting, slicing, or even the use of a fork or knife." *Evart v. Suli*, 211 Cal. App. 3d at 613-14, 259 Cal. Rptr. at 541. "If one 'reasonably expects' to find an item in his or her food then he guards against being injured by watching for that item. When one eats a hamburger he does not nibble his way along hunting for bones because he is not 'reasonably expecting' one in his food." *Jackson v. Nestle-Beiche, Inc.*, 212 Ill. App. 3d 296, 304, 569 N.E.2d 1119, 1123 (1991) (quoting *O'Dell v. DeJean's Packing Co.*, 585 P.2d 399, 402 (Okla. Ct. App. 1978)).

We conclude that Wendy's' implied warranty regarding "merchantable" hamburgers neither requires perfection nor stops at some manifest line between "foreign" and "natural" substances in the meat. It depends upon what the consumer should reasonably expect to encounter.

[3] Defendant Wendy's introduced a U.S.D.A. chart of meat defects that has been adopted by the State Board of Agriculture pursuant to N.C.G.S. § 106-128. This statute provides:

A food shall be deemed to be adulterated . . . [i]f it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated . . . if the quantity of such substance in such food does not ordinarily render it injurious to health.

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

N.C.G.S. § 106-129 (1988). Wendy's argues that the evidence supported its contention that its hamburger complied with these standards. Wendy's reasons that this chart indicates some tolerance in the trade for bone fragments in meat and that its hamburgers, like the filbert shell in the mixed nuts in *Coffer*, are therefore merchantable as a matter of law.

The Court of Appeals rejected this argument, noting that compliance "with all state and federal regulations is only some evidence which the jury may consider in determining whether the product was merchantable." 100 N.C. App. at 115, 394 S.E.2d at 836. We agree. Proof of compliance with government standards is no bar to recovery on a breach of warranty theory: although such evidence may be pertinent to the issue of the existence of a breach of any warranty, it is not conclusive. *Reid v. Eckerds Drugs, Inc.*, 40 N.C. App. 476, 483, 253 S.E.2d 344, 349, *cert. denied*, 297 N.C. 612, 257 S.E.2d 219 (1979). *See also Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 68-69, 376 S.E.2d 425, 428 (1989) (compliance with statutory standard is only evidence of due care); *Wilson v. Hardward, Inc.*, 259 N.C. 660, 666, 131 S.E.2d 501, 505 (1963) (voluntary adoption of a safety code as the guide to be followed for protection of the public is at least some evidence that a reasonably prudent person would adhere to the requirements of the code).

[4]  We thus conclude, as did the Court of Appeals majority, that a jury could reasonably determine the meat to be of such a nature, *i.e.*, hamburger, and the bone in the meat of such a size that a consumer of the meat should not reasonably have anticipated the bone's presence. The Court of Appeals therefore properly reversed directed verdict for Wendy's on plaintiff's implied warranty of merchantability claim.

B. NEGLIGENCE

[5]  Directed verdicts in a negligence action should be granted with caution because, ordinarily, it is for the jury to determine whether the applicable standard of care has been breached. *See Taylor v. Walker*, 320 N.C. 729, 734, 360 S.E.2d 796, 799 (1987). But when there is no evidence of an essential element of plaintiff's negligence claim, directed verdict is proper. *E.g., McMurray v. Surety Federal Savings & Loan Assoc.*, 82 N.C. App. 729, 348 S.E.2d 162 (1986), *cert. denied*, 318 N.C. 695, 351 S.E.2d 748 (1987).

In order to survive defendant's motion for a directed verdict, plaintiff was required to present some evidence that Wendy's failed to exercise proper care in the performance of some legal duty owed him and that the breach of this duty was the proximate cause of his injury. *E.g., Collingwood v. G.E. Real Estate Equities,* 324 N.C. at 66, 376 S.E.2d at 427. The cause producing the injurious result must be in a continuous sequence, without which the injury would not have occurred, and one from which any person of ordinary prudence would have foreseen the likelihood of the result under the circumstances as they existed. *E.g., Ashe v. Acme Builders, Inc.,* 267 N.C. 384, 386-87, 148 S.E.2d 244, 246 (1966); *Jackson v. Gin Co.,* 255 N.C. 194, 196, 120 S.E.2d 540, 542 (1961).

In the principal opinion for the Court of Appeals, Judge Greene stated that a jury could conclude that a bone like that described by the plaintiff was of a size that ordinarily renders a hamburger injurious to health. Such a determination would prove a violation of N.C.G.S. §§ 106-122 and 106-124 of the North Carolina Food, Drug and Cosmetic Act, which prohibits "the manufacture, sale, or delivery, holding or offering for sale of any food . . . that is adulterated." N.C.G.S. § 106-122(1) (1988). A food is deemed adulterated

> [i]f it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated . . . if the quantity of such substance in such food does not ordinarily render it injurious to health.

N.C.G.S. § 106-129 (1988).

[6] When a statute "imposes upon a person a specific duty for the protection of others, a violation of such statute is negligence *per se.*" *Lutz Industries, Inc. v. Dixie Home Stores,* 242 N.C. 332, 341, 88 S.E.2d 333, 339 (1955). The North Carolina Pure Food, Drug and Cosmetic Act imposes upon a restaurateur the general duty not to sell adulterated food, which might include beef bone in hamburger, if the quantity of the bone "ordinarily render[ed] it injurious to health." N.C.G.S. § 106-129 (1988).

But the Act provides no standard by which to comply with that duty. Such a standard of care would presumably be imposed, for example, by state regulations, promulgated pursuant to the Act, that specify the tolerance for bone fragments in ground

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

meat.[3] A standard of care is also imposed under the law of negligence:

> A keeper of a public eating place, engaged in the business of serving food to customers, is bound to use due care and see that the food served to his customers, at his place of business, is fit for human consumption and may be eaten without its causing injury, and for an injury caused by negligence in failing to observe this duty to his patrons such keeper is liable.

36A C.J.S. *Food* § 61, at 914 (1961). *See also Loyacano v. Continental Insurance Co.*, 283 So. 2d at 305 ("the reasonable expectation of the ordinary consumer is that the processor and vendor of ground meat would exercise the same care as that which a reasonably prudent man skilled in the art of meat handling would exercise in the removal of bones from the meat").[4]

[7] The question whether the verdict was properly directed for Wendy's on plaintiff's negligence claim rests upon the inquiry whether there was evidence in the record from which a jury might determine that Wendy's breached this standard of due care, proximately resulting in plaintiff's injury.

Evidence presented at trial indicated that Wendy's had exercised due care in the preparation of its hamburgers. Wendy's' grinding specifications stated that "acceptable" preparation of its meat was to chop beef free of "all bones" and force it through a one-eighth-inch plate. The specifications stated, however, that the "preferred" preparation was to force such meat through two plates— initially a one-half-inch or three-eighths-inch plate, then a one-eighth-inch plate. Jake Leggett, the owner of GMSC, testified that the grinding process employed for hamburger supplied to Wendy's forces the chopped meat through a three-eighth-inch-diameter hole, then re-chopped by being forced through rapidly spinning knives, then through one-eighth-inch-diameter holes. Mr. Leggett added that

---

3. *See, e.g.*, 2 NCAC 52D .0001 (Dec. 1991) (adopting by reference U.S.D.A. rules, regulations, definitions, and standards governing meat and meat products set out in 9 CFR §§ 301 *et seq.* (1992)).

4. There is some authority for holding restaurateurs liable on a theory of strict liability in tort, thus presuming negligence or obviating its proof. *See generally* Restatement (Second) of Torts § 402A (1965). *See also Jim Dandy Fast Foods, Inc. v. Carpenter*, 535 S.W.2d 786 (Tex. Civ. App. Houston (1st Dist.) 1976) (rule of strict liability applies in Texas). Such a theory is neither relied on by plaintiff here nor have we adopted it in North Carolina.

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

GMSC also uses a "bone collector" device, not required by either North Carolina Department of Agriculture nor U.S.D.A. Regulations, "intended to remove from the meat a lot of the bone and gristle which remains after the grinding process."

That Wendy's took precautions to ascertain the meat used in its hamburger was reliably free of injurious bone fragments is uncontradicted in the record. It is not contradicted by the mere presence of bone fragment as small as the one described by plaintiff. The presence of such a small fragment, standing alone, creates no inference that Wendy's was negligent in its inspection of the hamburger it served to plaintiff. *Norris v. Pig'n Whistle Sandwich Shop, Inc.*, 79 Ga. App. 369, 375, 53 S.E.2d 718, 722 (1949). "To permit an inference of ordinary negligence from the mere presence of a particle of bone in a [hamburger] sandwich would place the seller in a position of a virtual insurer of the perfection of the food." *Id.*, 53 S.E.2d at 722. Even in an action based on breach of implied warranty, the restaurateur is not expected to serve a perfect product, but one within the consumer's "reasonable expectations" for wholesome food.

> [T]he defendant was not required, in the exercise of ordinary care, to discover and eliminate every single particle of bone from the . . . sandwich, and the mere presence of a particle of bone in the sandwich does not authorize an inference of negligence in preparing and furnishing the food to the plaintiff.

*Id.*, 53 S.E.2d at 723. *See also Polite v. Carey Hilliards Restaurants, Inc.*, 177 Ga. App. 170, 170, 338 S.E.2d 541, 542 (1985) (presence of piece of fishbone in portion of fish does not authorize an inference of negligence in preparing and furnishing the food to plaintiff). Consequently, we affirm the mandate of the majority of the Court of Appeals affirming the directed verdict for Wendy's on the issue of Wendy's' negligence.[5]

## II. GMSC

In ruling on a motion for summary judgment, the trial court considers the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits to determine the existence

---

5. Our holding here does not foreclose the successful prosecution of a negligence action where the injury-causing substance in the food was, because of its size, quantity or nature, so readily detectible that its mere presence in the food creates an inference of negligence on the part of the seller.

of any genuine issue as to any material fact. N.C.G.S. § 1A-1, Rule 56(c) (1990). "[T]he burden is upon the moving party to establish the lack of any triable issue of fact. The papers of the moving party are carefully scrutinized and 'those of the opposing party are on the whole indulgently regarded.'" *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975) (quoting 6 James W. Moore et al., *Moore's Federal Practice* § 56.15[8], at 2440 (2d ed. 1975)). "The movant may meet this burden by proving an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. at 66, 376 S.E.2d at 427. "The movant is held . . . to a strict standard, and 'all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion.'" *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore et al., *Moore's Federal Practice* § 56.15[3], at 2337 (2d ed. 1971)).

[8] A summary judgment motion may progress through two steps: first, the movant must meet the burden of proving an essential element of plaintiff's claim does not exist, cannot be proven at trial or would be barred by an affirmative defense. Only after a moving party meets this burden must the nonmovant "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. at 66, 376 S.E.2d at 42, quoted in *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 341 (1992). At this second stage it is not incumbent upon a plaintiff to "present all the evidence available in his favor[,] but only that necessary to rebut the defendant's showing." *Morrison v. Sears, Roebuck & Co.*, 319 N.C. at 300, 354 S.E.2d at 497 (quoting *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981)).

## A. IMPLIED WARRANTY OF MERCHANTABILITY

The elements essential to a claim for breach of implied warranty of merchantability are: (1) the goods bought and sold were subject to an implied warranty of merchantability, (2) the goods were defective at the time of the sale, (3) the defective nature of the goods caused plaintiff's injury, and (4) damages were suffered as

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

a result. *Morrison v. Sears, Roebuck & Co.*, 319 N.C. at 301, 354 S.E.2d at 497.

As a preliminary matter, GMSC, like Wendy's, relies upon the "foreign-natural" distinction in *Adams* in contending that liability for breach of the implied warranty of merchantability was precluded by the fact that the bone was "natural" to ground beef. As we have made clear, it is the consumer's "reasonable expectations" rather than a distinction based upon the source of the injurious substance that determines whether the food was "defective" for purposes of this cause of action. A meat supplier's implied warranty that its product is merchantable is not foreclosed merely by virtue of the fact that the alleged "defect" resulting in the consumer's injury was "natural" to that product.

[9] To support its motion for summary judgment on plaintiff's implied warranty of merchantability claim, GMSC offered the pleadings and plaintiff's deposition. Plaintiff alleged in his complaint that GMSC was in the business of selling meat to Wendy's for use in the preparation and selling of food products to the general public and as such GMSC was a merchant with regard to those products. GMSC admitted in its answer that it is "a corporation . . . engaged in and operating a meat supply business," "that Greensboro Meat has sold meat products to Wenco Foods, Inc., from time to time," and "that Wendy's used some of the meat products sold by Greensboro Meat to make hamburger patties." In his deposition plaintiff averred that he had eaten approximately one half of his hamburger when he bit into a piece of bone that was "in the [hamburger] meat" and broke off a piece of one or more teeth. Plaintiff also indicated that medical and dental bills resulting from this incident were before the court.

GMSC contends a certain answer in plaintiff's deposition demonstrated that plaintiff could not prove at trial that the hamburger meat he was eating was supplied by GMSC. The answer was in response to a question posed by GMSC's counsel. The colloquy leading to the answer and the answer appear as follows in the deposition:

Q: Do you have any positive proof that the hard substance was in the meat which was manufactured, processed, or sold by Greensboro Meat Supply Company?

. . . .

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

A: . . . I believe that since the greater majority of the mass that was in my mouth was cooked meat, that it was in the meat.

Q: But you do not have any way of proving that this substance was in the meat that you spit out of your mouth?

A: That's right.

Q: And you do not have any way of proving that the particular meat that you spit out of your mouth came from Greensboro Meat Supply Company, do you?

A: That's correct.

GMSC relies on the last answer given by plaintiff for its argument that plaintiff's case against it should have been foreclosed at the summary judgment hearing.

We disagree. From the context of the question and answer, particularly the immediately preceding question and answer, the sense of plaintiff's response seems clearly to be that plaintiff had no direct evidence, or as is sometimes said "ocular proof," or as it was put in counsel's earlier question, no proof positive of the fact that the meat he was eating came from GMSC. Such proof would not, of course, be required at trial. Plaintiff had just admitted that he "had no way of proving" the bone came from the meat as opposed to the roll, or the condiments. Yet we know that the source of the bone can be proved by inferences from other facts plaintiff related, e.g., the bone appeared to be a meat bone and most of the substance in plaintiff's mouth at the time of the injury was meat. The source of the meat, like the source of the bone, could be proved at trial by inferences from other facts, some of which are admitted in GMSC's answer to the complaint.

GMSC's admissions in its answer belie plaintiff's assessment of his proofs. At best, plaintiff's testimony and GMSC's admissions create an issue of material fact at the summary judgment stage.

We hold that GMSC's admissions and the facts and inferences stated in plaintiff's complaint and deposition, if true, create a genuine issue of material fact as to each element of plaintiff's claim against GMSC based upon its breach of the implied warranty of merchantability. In light of GMSC's admission that "from time to time" they supplied meat products to Wendy's "to make hamburger patties" plaintiff's testimony on deposition does not foreclose his

ability to prove at trial that GMSC supplied the ground beef to Wendy's from which the hamburger patty containing the bone was made. Neither does the showing at summary judgment foreclose plaintiff's ability to prove at trial that the ground beef was defective at the time of its sale to Wendy's. Finally, plaintiff's deposition statements raise genuine issues of material fact as to whether the defective nature of the ground beef caused plaintiff's injury and resulting damages.

[10]    GMSC next argues it was entitled to summary judgment because it could "conclusively establish[ ] a complete defense or legal bar to the nonmovant's claim." *Virginia Electric & Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 190-91, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). In *Morrison v. Sears, Roebuck & Co.*, we concluded "an action for breach of implied warranty of merchantability under the Uniform Commercial Code is a 'product liability action' within the meaning of the Products Liability Act if . . . the action is for injury to person or property resulting from a sale of a product." 319 N.C. at 303, 354 S.E.2d at 498. "[I]n products liability actions arising from breaches of *implied* warranties . . . the defenses provided by N.C.G.S. § 99B-2(a) are available to defendants." *Id.* at 303, 354 S.E.2d at 499. It follows that defendants may avail themselves of defenses provided elsewhere in the Products Liability Act.[6]

In its answer GMSC asserted statutory bars to plaintiff's action under two sections of North Carolina's Products Liability Act. The first of these sections provides, in pertinent part:

(a) No manufacturer or seller of a product shall be held liable in any product liability action where a proximate cause of the personal injury . . . was either an alteration or modifi-

---

6. GMSC appropriately does not raise a defense based on plaintiff's lack of privity. This bar was effectively eliminated by the North Carolina Products Liability Act: "A claimant who is a buyer . . . may bring a product liability action directly against the manufacturer of the product involved for breach of implied warranty; and the lack of privity of contract shall not be grounds for the dismissal of such action." N.C.G.S. § 99B-2(b) (1989). *See also* Charles F. Blanchard and Doug B. Abrams, *North Carolina's New Products Liability Act: A Critical Analysis*, 16 Wake Forest L. Rev. 172, 179 (1980) (". . . North Carolina courts have often required privity in implied warranty cases. The new North Carolina Products Liability Act, however, ends this requirement. Section 99B-2(b) of the Act expressly states that 'the lack of privity of contract shall not be grounds for dismissal' of implied warranty actions.")

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

cation of the product by a party other than the manufacturer or seller, which alteration or modification occurred after the product left the control of such manufacturer or such seller unless:

> (1) The alteration or modification was in accordance with the instructions or specifications of such manufacturer or such seller; or
>
> (2) The alteration or modification was made with the express consent of such manufacturer or such seller.

(b) For the purposes of this section, alteration or modification includes changes in the design, formula, function, or use of the product from that originally designed, tested, or intended by the manufacturer. . . .

N.C.G.S. § 99B-3 (1989). The next section provides that the manufacturer or seller is not liable in a product liability action if the product is used contrary to instructions, warnings, or, in their absence, common sense:

> No manufacturer or seller shall be held liable in any product liability action if:

(1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; . . . or

(2) The user discovered a defect or unreasonably dangerous condition of the product and was aware of the danger, and nevertheless proceeded unreasonably to make use of the product and was injured by or caused injury with that product; or

(3) The claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant.

N.C.G.S. § 99B-4 (1989).

GMSC contends that any alteration or modification in the ground beef after the product left its control was not in accord with its instructions or specifications and that such a modification must have been the cause of the alleged defect resulting in plaintiff's injury.

Suffice it to say that there was no forecast of evidence at the hearing on GMSC's motion for summary judgment that would support, factually, GMSC's entitlement to these defenses as a matter of law. GMSC's entitlement to these defenses must be left for determination at trial.

We conclude that GMSC failed to carry its burden as the movant for summary judgment to prove that any essential element of plaintiff's claim for breach of the implied warranty of merchantability is nonexistent or that plaintiff will be unable at trial to produce evidence supporting an essential element or that, as a matter of law, GMSC is entitled to an affirmative defense that would bar plaintiff's claim. The averments and admissions of fact in the pleadings and in plaintiff's deposition, together with their permissible inferences, raise issues of fact material to GMSC's liability for plaintiff's injury on the basis of an implied warranty of merchantability which were not dispelled by GMSC in its motion for summary judgment. We accordingly agree with the decision of the Court of Appeals majority to reverse summary judgment for GMSC on that claim.

## B. NEGLIGENCE

In North Carolina, "a manufacturer of a product is under a duty to the ultimate purchaser, irrespective of contract, to use reasonable care in the manufacture and inspection of the article so as not to subject the purchaser to injury from a latent defect." *Terry v. Bottling Co.*, 263 N.C. 1, 4, 138 S.E.2d 753, 755 (1964) (Sharp, J., concurring). In order to prevail in an action to recover for personal injuries resulting from the negligence of a processor or manufacturer, the plaintiff must present evidence tending to show that the manufactured product was defective when it left the manufacturer's plant and that the manufacturer "was negligent in its design of the product, in its selection of materials, in its assembly process, or in inspection of the product." *Sutton v. Major Products Co.*, 91 N.C. App. 610, 612, 372 S.E.2d 897, 898 (1988). The chain of causation cannot have been significantly interrupted

GOODMAN v. WENCO FOODS, INC.

[333 N.C. 1 (1992)]

by the intervention of a third party. *E.g., Corprew v. Chemical Corp.*, 271 N.C. 485, 493, 157 S.E.2d 98, 103 (1967).

We again stress that on a motion for summary judgment the burden of proving that there is no genuine issue as to any material fact is on the movant, and if he fails to carry that burden, summary judgment is not proper, whether or not the nonmoving party responds. *See Steel Creek Dev. Corp. v. James*, 300 N.C. 631, 637, 268 S.E.2d 205, 209 (1980). Summary judgment is "a drastic measure, and it should be used with caution." *Williams v. Power & Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979). The burden on the movant is particularly heavy when the plaintiff has alleged negligence: "Negligence claims are rarely susceptible of summary adjudication, and should ordinarily be resolved by trial on the issues." *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983), *quoted in Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. at 69, 414 S.E.2d at 435-46 (Frye, J., dissenting).

[11] In its answer GMSC admitted it was a supplier of ground beef to Wendy's restaurant where plaintiff was injured and that some of its meat products were used to make hamburger patties. Plaintiff's complaint and deposition stated that a bone in the hamburger beef injured him and resulted in monetary damages. As we have noted in our analysis of GMSC's motion for summary judgment based on plaintiff's breach of implied warranty claim, GMSC's admission that "Wendy's used some of the meat products sold by Greensboro Meat to make hamburger patties" contributes to and does not eradicate the material factual questions as to whether GMSC manufactured the ground beef from which plaintiff's hamburger was made and whether the beef contained the bone fragment when it left GMSC's plant.

The evidence adduced through discovery and proffered by GMSC at the time of the hearing on GMSC's motion for summary judgment was silent as to GMSC's negligence, or lack of it. GMSC did not proffer evidence of the nature of Jake Leggett's testimony at trial concerning Wendy's' grinding specifications and GMSC's meat processing procedures, nor did it point to any such evidence as having already been adduced through discovery. Therefore, under the authorities previously cited dealing with the evidentiary burdens of the party moving for summary judgment and the opposing party, respectively, GMSC did not meet its initial burden of showing

that plaintiff could not prove GMSC's negligence at trial. Plaintiff was not then required to go forward with an evidentiary forecast of GMSC's negligence. If GMSC had proffered evidence at the summary judgment hearing or pointed to evidence already adduced during discovery tending to show that it had exercised due care in the preparation of its meat products, then plaintiff would have been required to forecast evidence to the contrary, or point to such evidence already adduced during discovery, in order to have survived GMSC's motion.

We therefore hold that GMSC failed to sustain its burden as movant for summary judgment of demonstrating that an essential element of plaintiff's negligence claim was nonexistent or incapable of proof or barred by an affirmative defense. *See Collingwood v. G.E. Real Estate Equities*, 324 N.C. at 66, 376 S.E.2d at 427.

The majority of the Court of Appeals voted to affirm summary judgment for GMSC on the issue of GMSC's negligence. We reverse the Court of Appeals on this issue.

To summarize: As to plaintiff's claims against Wendy's, we affirm the Court of Appeals' decision remanding the implied warranty claim for trial and affirming directed verdict in favor of Wendy's on the negligence claim. As to plaintiff's implied warranty claim against GMSC, we affirm the Court of Appeals' decision reversing summary judgment for GMSC and remanding for further proceedings. As to plaintiff's negligence claim against GMSC, we reverse the decision of the Court of Appeals majority affirming summary judgment for GMSC, and we remand this claim to the Court of Appeals for further remand to the trial court for further proceedings.

Affirmed in part; reversed in part; remanded.

Justice Lake did not participate in the consideration or decision of this case.