A03A0345. MITCHELL v. BBB SERVICES COMPANY, INC. et al.
(582 SE2d 470)

SMITH, Chief Judge.
Ronnie Mitchell appeals from the trial court's grant of summary judgment to the defendants in the action brought by Mitchell to recover damages for personal injuries he suffered when he broke a tooth on a small, hard object after biting into a hamburger at a Wendy's restaurant. He contends summary judgment for the defendants was improper, arguing that at least a jury question exists as to whether the restaurant breached implied warranties of merchantability and fitness for purpose. We agree and reverse.

The record shows that Mitchell bought a hamburger from Wendy's. When he began to eat the hamburger, he felt "something extremely hard" strike his tooth, causing pain that "felt like someone had shot me in the tooth with a BB. It was painful. It got more painful." He immediately stopped chewing, removed the food from his mouth, and discovered the particle he had bitten down on. He described it as a "bone color" particle that broke when he bit down on it. He was able to retrieve two pieces that were big enough to see, which were about the thickness of a pencil lead, about one-eighth to one-tenth of an inch. He reported it to the restaurant's manager, who

apologized, threw the entire tray away, and asked him to complete a claim form, which he did. Mitchell could not state with certainty whether the object came from the lettuce, the tomato, the bread, or the meat, but he knew that it had been somewhere in the hamburger and assumed the object was a bone chip in the meat.

Mitchell argues that the presence of a bit of bone in the hamburger constituted a "defect" that rendered the hamburger unmerchantable under OCGA § 11-2-314. Wendy's first asserts that Mitchell's claim is for "negligence" for having been served "adulterated food." That is not the case, as Mitchell's complaint alleges a breach of implied warranties under OCGA § 11-2-314.[1] Wendy's then argues that because the "defect" was a substance that is "natural" to beef it cannot be liable, nor can it be liable for defects that are "discoverable by ordinary prudence on the part of the consumer." We do not agree.

It is clear that before the adoption of the Uniform Commercial Code "it was the settled law in Georgia that a restaurateur who furnished unwholesome food or food containing a foreign substance or dangerous object to a customer who was injured thereby was not liable upon the theory of an implied warranty. [Cit.]" *Ray v. Deas*, 112 Ga. App. 191, 192 (2) (144 SE2d 468) (1965). But

> the plain, unambiguous, and express language of § 2-314 of the Uniform Commercial Code ([OCGA § 11-2-314]) provides: "Unless excluded or modified . . . , a warranty that the goods sold shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale."

Id.

This section changed the prior law, creating a cause of action for breach of implied warranties in just such circumstances as those presented here. The cases relied on by Wendy's, *Polite v. Carey Hilliards Restaurants*, 177 Ga. App. 170 (338 SE2d 541) (1985), and *Norris v. Pig'n Whistle Sandwich Shop*, 79 Ga. App. 369 (53 SE2d 718) (1949), although factually similar, are not applicable because they are negligence cases and the plaintiffs did not seek recovery on the basis of breach of implied warranties. Neither party cites Georgia

---

[1] Although Mitchell's complaint asserted claims for negligence and negligence per se, he admitted at the hearing on the motion for summary judgment that he could not support such claims. On appeal, the only claim in issue is that under OCGA § 11-2-314 for breach of implied warranties.

authority that is both factually similar and legally apposite, and our own review reveals no such authority.

We are persuaded, however, by the reasoning of the North Carolina Supreme Court in *Goodman v. Wenco Foods*, 333 N.C. 1 (423 SE2d 444) (1992). The facts in *Goodman* are almost identical: a customer was injured when he bit down on a small bone in a hamburger purchased at a Wendy's restaurant. Id. He brought suit under theories of both negligence and breach of implied warranties. The trial court allowed both plaintiff's claims against Wendy's to go to trial, and at trial Wendy's motion for directed verdict was granted as to both claims. The North Carolina Court of Appeals affirmed the directed verdict as to the negligence claim but reversed the directed verdict on the claim for breach of warranties, and the North Carolina Supreme Court affirmed that decision.

In doing so, the court undertook a thorough and detailed review of the implied warranty of merchantability as it applied to this factual scenario. North Carolina's statute appears to be substantially similar, if not wholly identical, to OCGA § 11-2-314. *Goodman*, supra at 9-10. To prove a breach of this implied warranty a plaintiff must show four elements: (1) that the goods were subject to the warranty; (2) that the goods were defective; (3) that the injury was caused by the defective goods; and (4) that damages were incurred as a result. Id. at 10. In this fact situation, the "keystone" is "[w]hether the bone in the hamburger caused the product to be unfit for consumption, i.e., 'defective.'" Id. In deciding this question, the court broke with prior North Carolina precedent that precluded recovery whenever the substance causing injury was "natural" to the food itself, such as a bone in fish or a piece of shell in nuts. In overruling this prior case law, the court reasoned that:

> We think the modern and better view is that there may be recovery, notwithstanding the injury-causing substance's naturalness to the food, if because of the way in which the food was processed or the nature, size or quantity of the substance, or both, a consumer should not reasonably have anticipated the substance's presence.

Id. at 15. Citing Wisconsin, Illinois, Louisiana, Texas, and Alabama case law with approval, the court concluded that

> [n]aturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served. It is not the fact that a defect is a natural one which is important to this

inquiry, but the fact that the ordinary consumer would expect that he might encounter it, and thus he would normally take his own precautions.

(Citations and punctuation omitted.) Id. The court concluded that the fact that a foreign substance is "natural" to the food consumed is not a bar to recovery, provided that

the substance is of such a size, quality or quantity, or the food has been so processed, or both, that the substance's presence should not reasonably have been anticipated by the consumer. A triangular, one-half-inch, inflexible bone shaving is indubitably "inherent" in or "natural" to a cut of beef, but whether it is so "natural" to hamburger as to put a consumer on his guard — whether it "is to be reasonably expected by the consumer" — is, in most cases, a question for the jury.

Id. at 15-16.

The court noted that it

is difficult to conceive of how a consumer might guard against the type of injury present here, short of removing the hamburger from its bun, breaking it apart and inspecting its small components. We doubt that any hamburger manufacturer seriously expects consumers to go to such lengths, especially since a hamburger sandwich is meant to be eaten out of hand, without cutting, slicing, or even the use of a fork or knife. If one "reasonably expects" to find an item in his or her food then he guards against being injured by watching for that item. When one eats a hamburger he does not nibble his way along hunting for bones because he is not "reasonably expecting" one in his food.

(Citations and punctuation omitted.) *Goodman*, supra at 16. In the circumstances presented in *Goodman*, the North Carolina Supreme Court concluded "that a jury could reasonably determine the meat to be of such a nature, i.e., hamburger, and the bone in the meat of such a size that a consumer of the meat should not reasonably have anticipated the bone's presence." Id. at 17.

We have found no Georgia law on all fours. OCGA § 11-2-314 clearly applies, and the analysis and reasoning of the North Carolina Supreme Court display great common sense. We are therefore persuaded that in the factual circumstances presented here, which are practically identical to those in *Goodman*, we should follow the reasoning of *Goodman* with respect to its analysis of the claim for breach

of the implied warranties. Here, as in *Goodman*, a jury could reasonably find that because of the nature of the food, Mitchell should not reasonably have anticipated the bone's presence and that the meat was therefore "defective" within the meaning of OCGA § 11-2-314. Because this material question must be decided by a jury, the trial court's grant of summary judgment to Wendy's must be reversed.

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED APRIL 24, 2003 —
RECONSIDERATION DENIED MAY 13, 2003 —

*Teddy R. Price*, for appellant.
*Phears & Moldovan, Richard O. Samms, Misner, Scott & Martin, Bobby B. Terry*, for appellees.