HARRY FRIER, Respondent, v. LAUBE'S OLD SPAIN, INC., Appellant.

ESTHER FRIER, Respondent, v. LAUBE'S OLD SPAIN, INC., Appellant.

Fourth Department, January 27, 1943.

*Eric P. Smith* for appellant.

*John J. McInerney* for respondents.

DOWLING, J. The defendant operates a restaurant on East avenue, Rochester, N. Y. On or about May 12, 1941, the plaintiff Esther Frier, wife of the plaintiff Harry Frier, visited the defendant's restaurant in question with a friend named Margaret J. Emler. Mr. Frier was not with them. Mrs. Frier inquired of a waitress about the menu and the waitress recommended the turkey dinner which was listed thereon. Mrs. Frier and her friend then ordered turkey dinners which were served to them on plates which were divided into separate compartments. The dinners as served consisted of turkey, cranberry sauce, squash, mashed potatoes, gravy and dressing. The squash, the potatoes, the sliced turkey and the dressing were in separate compartments on the plates. The cranberry sauce was served in a small paper cup. The dressing was of a brownish color. Mrs. Frier first ate some of the turkey, the mashed potatoes and gravy, then she ate some of the dressing. After chewing some of the dressing, Mrs. Frier felt that she had swallowed some foreign substance which had scratched her throat. Feeling that the substance had lodged in her throat, she swallowed some bread and water in an attempt to dislodge it. Failing in her effort to dislodge the substance, she visited her physician on the following day, May 14, 1941, and was referred by him to Dr. O'Brien, a throat specialist. Dr. O'Brien looked in her throat, but saw nothing. He referred her to an X-ray specialist who took X-ray pictures of her throat and reported his findings to Dr. O'Brien. The X-ray pictures showed what appeared to be a foreign object in the esophagus. Dr. O'Brien then inserted a special metal instrument called an esophagoscope into her esophagus in an attempt to extract the supposed foreign object. Dr. O'Brien observed that there was a slight abrasion in the posterior wall at the beginning of the esophagus but he discovered no foreign body in the esophagus. He was of the opinion that the insertion of the tube into the esophagus dilated the spasm with the result that the foreign substance, which he believed to be an ossified cartilage, having a lot of mineral in it, passed down into the stomach. At Doctor O'Brien's suggestion, Mrs. Frier had more X-rays of her throat taken by the same X-ray specialist. The additional X-rays were taken on May 20, 1941, and they showed the same density

in the same location as shown in the first X-rays. With these X-rays before him, Doctor O'Brien was unable to state whether or not there was a foreign substance in Mrs. Frier's esophagus. No foreign substance of any kind was ever found in Mrs. Frier's esophagus.

Mr. and Mrs. Frier instituted separate actions against the restaurant to recover damages. In each action the plaintiff sought to recover on two causes of action — one for breach of warranty and the other for negligence. The restaurant answered in each case denying liability. The issues were tried before a jury. The learned trial judge submitted the cases to the jury on the breach of warranty and the negligence counts. The jury returned general verdicts in the actions in favor of the plaintiffs. Motion to set aside the verdict and for a new trial in each case was made and denied. From the orders denying the motions and from the judgments, the defendant has appealed.

The defendant impliedly warranted that the food served to Mrs. Frier was reasonably fit for consumption. (*Temple* v. *Keeler,* 238 N. Y. 344, 346.) Where, as here, the wife was the purchaser, the cause of action for breach of warranty was hers alone and the husband has no action for consequential damages arising from the breach of warranty. (*Gimenez* v. *Great Atlantic & Pacific Tea Company,* 264 N. Y. 390, 393.) The husband could maintain an action for consequential damages on the theory of negligence. (*Bourcheix* v. *Willow Brook Dairy, Inc.,* 268 N. Y. 1, 6.)

We are unable to determine from the record whether the jury found for the plaintiffs on the breach of warranty counts or the negligence counts or on both counts. This being the case, the judgment in favor of the plaintiff husband cannot stand.

The proof at the trial, in substance, was as above outlined. There was no testimony from which a jury could reasonably say that Mrs. Frier was injured by some foreign substance contained in the dressing which she ate. For aught that appears the wound in Mrs. Frier's esophagus might have been made by a hard piece of dressing which eventually disappeared. The X-rays taken before and the X-rays taken after Doctor O'Brien had inserted the esophagoscope in Mrs. Frier's esophagus and after the supposed foreign substance had dropped down into Mrs. Frier's stomach, were identical in that they showed a dark object in the same location. On cross-examination, Doctor O'Brien testified: " Q. You sent Mrs. Frier back to Doctor Davidson after you did this esophagoscopy? A. That's right. Q. Sent her back and had some more X-rays? A. Yes, sir.

Q. Didn't they show the same area here the first ones did? A. That's right. Q. You said here on your direct examination you must have knocked the foreign substance out with that thing when you put it down? A. That's right. * * * . Q. And then X-ray was again taken, and the report made ' Following is report of X-ray examination of May 20th, on Mrs. Frier. Repeat examination of the cervical area shows the same density in the same location. It lies in relationship to the cricoid cartilage.' After this foreign substance was gone, it still shows in the X-ray as when originally interpreted to be a foreign substance? A. That's right. Q. How do you know it to be a foreign substance? A. I don't know. Q. That is true, that you don't know? A. No. Q. What you found on your examination was a laceration of the esophagus? A. Right. Q. That could be made by any hard substance? A. Right. Q. That is all you found at any time? A. That is right." Dr. O'Brien testified that he thought the object he saw in the X-rays was an ossified cartilage. If it was, it must have been native to Mrs. Frier's esophagus. The second X-ray pictures indicate as much. Hence Dr. O'Brien must have been in error in thinking that when he inserted the esophagoscope into Mrs. Frier's esophagus, the alleged foreign substance was forced down into her stomach. There is no proof that any foreign substance was in the dressing which Mrs. Frier ate. Nor is there proof that any foreign substance lodged in Mrs. Frier's esophagus.

The orders and judgments should be reversed and new trials should be granted.

All concur. Present — CUNNINGHAM, TAYLOR, DOWLING, HARRIS and McCURN, JJ.

In the first above-entitled action: Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

In the second above-entitled action: Judgment and order reversed on the facts and a new trial granted, with costs to the appellant to abide the event.