■ MARY KOTIADIS et al., Respondents, v. GRISTEDE BROS., INC., Appellant-Respondent, and MINUTE MAID CORP., Appellant.— Resettled judgment, entered March 27, 1963, dismissing first cause of action by plaintiff Mary Kotiadis against defendants Gristede Bros., Inc., and Minute Maid Corp., dismissing second cause of action of Gristede Bros., Inc., against Minute Maid Corp., and adjudging after jury verdict that plaintiffs recover a total of $13,235 from Gristede Bros., Inc., and Gristede Bros., Inc., recover $13,235 from Minute Maid Corp., modified on the law to the extent of reversing the judgment of damages against Gristede Bros., Inc., and against Minute Maid Corp., vacating

the jury verdict awarding damages against Gristede Bros., Inc., and against Minute Maid Corp. and granting a new trial of the implied warranty cause of action of plaintiffs-respondents against Gristede Bros., Inc., and of the implied warranty cause of action of Gristede Bros., Inc., against Minute Maid Corp., and otherwise the resettled judgment is affirmed, with costs to Gristede Bros., Inc., from plaintiffs-respondents and to Minute Maid Corp. from Gristede Bros., Inc. The appeal from the original judgment is dismissed, without costs. The judgment against Gristede must be reversed because the trial court struck the testimony of Minute Maid's expert witness over the attempted objection of Gristede. It was apparent during the trial that Gristede was relying on Minute Maid's expert and had a continuing exception to adverse rulings of the trial court concerning his testimony. The expert contradicted plaintiffs' expert who had opined (1) that the particular can of Minute Maid fresh frozen grapefruit sections involved had been filled too full and exploded when hydrogen gas developed from the interaction of citric acid on the metal of the can and (2) that the swelling of the can followed by the explosion could have occurred in the brief interval between the time of purchase in the Gristede supermarket and the time plaintiff wife was at her home taking the can from her shopping bag. Minute Maid's expert testified (1) that hydrogen gas was not formed by the interaction of the citric acid on the type of mild carbon steel used in the can and (2) that swelling of such a can along with resulting rupture would ordinarily occur at normal room temperature, from bacteriological action, in about five to seven days. If the jury believed this testimony, it might have concluded that the plaintiffs' claim that the can was not swollen when purchased and yet exploded in a very short time was false. The can bore the legend " keep frozen — store in ice-cube compartment", and plaintiff wife could not read or speak English. Thus, she might have kept the can at normal room temperature for a long period of time during which the swelling would become apparent. Therefore, the stricken testimony was important because plaintiffs may not recover if the causes of the accident originated after the sale (see *Natale* v. *Pepsi-Cola Co.*, 7 A D 2d 282). The trial court struck the testimony because it was derived from tests recently conducted rather than tests conducted at the time of the accident in 1956. However, the time is of itself irrelevant. As to the tests concerning generation of hydrogen gas, the expert testified that the actual can was made of mild carbon steel, which he used, and that he also used the actual juice from Minute Maid fresh frozen grapefruit sections to get his citric acid. It could have been concluded those tests were reliable. As to the time it would take a can to explode, while counsel did not specifically ask whether the cans used were similar to those used in 1956, he did generally inquire what the tests consisted of, but an objection to the question was sustained. However, there was no objection to the testimony concerning the results of the tests and the time required for swelling and explosion. Under the circumstances it was erroneous to strike the testimony after both sides had rested and defendants could not establish how the tests were conducted, including the nature of the cans used. The trial court erroneously charged that Minute Maid would automatically be liable if Gristede were liable. While there is some evidence in the record that Gristede purchased the can from Minute Maid, it is apparent that it was kept under unknown conditions for an unknown length of time. Therefore, the instruction was erroneous (see *Natale* v. *Pepsi-Cola Co.*, *supra*). However, plaintiffs' expert testified that it was his strong opinion that the can was improperly packed, though he did not know the precise way in which it was filled. The can itself states that it was packed by Minute Maid. Also, there is some equivocal evidence concerning a rust spot which may indicate a defect in the can at the time it was packed.

Under the circumstances a claim based on implied warranty for the improper packing or defective can could be asserted against either Gristede or Minute Maid (see *Haller* v. *Rudmann,* 249 App. Div. 831; *Cooper* v. *Newman,* 11 N. Y. S. 2d 319). Therefore, the third-party complaint may not be dismissed, and a new trial must be ordered (see *Wearever Upholstering & Furn. Corp.* v. *Home Ins. Co.,* 286 App. Div. 93, 95; CPLR 4401, 4404; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 4401.13–4401.17, 4404.09). The refusal to admit into evidence the supposed conviction of the son of plaintiff was not erroneous since no foundation was laid by showing, for instance, that plaintiff wife knew of the conviction. It was necessary to show some circumstances indicating she knew her son had been convicted in order to establish the relevancy of the conviction to her claimed neurosis. Since a new trial is required, it should be noted that the cross-examination of Dr. Stuart by plaintiffs' counsel was abusive and unnecessarily protracted. Settle order on notice. Concur — Botein, P. J., Breitel, Valente, McNally and Bastow, JJ.