■ FRANCIS J. TARDELLA, Individually and as Parent and Natural Guardian of HOLLIE TARDELLA, an Infant, Appellant, v RJR NABISCO, INC., et al., Respondents.—Mercure, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Dickinson, J.), entered July 23, 1990 in Putnam County, which, *inter alia,* granted defendants' cross motions for summary judgment dismissing the complaint and to dismiss the complaint for lack of jurisdiction.

Plaintiff commenced this action in August 1986 to recover damages resulting from his infant daughter's January 1983 ingestion of a 7/8-inch "beading" pin which was embedded in a Baby Ruth candy bar which she purchased at a Rite-Stop convenience store in the Town of Carmel, Putnam County. In May 1990, plaintiff moved, *inter alia,* for permission to file a note of issue and certificate of readiness subsequent to the November 1, 1989 deadline established by Supreme Court, and defendant RJR Nabisco, Inc., the manufacturer of the candy bar, and defendant Mittsch Company, Inc., the wholesale distributor, each cross-moved for summary judgment dismissing the complaint. Defendant Buckeye Retailers, Inc., the retail seller of the candy bar, cross-moved to dismiss the complaint for lack of personal jurisdiction. Supreme Court granted the cross motions of all defendants and dismissed the complaint. Plaintiff appeals.

There should be an affirmance. Addressing first the grant of summary judgment in favor of Nabisco and Mittsch, we note that whether the action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury and, of greatest significance here, that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued *(see, Rosado v Proctor & Schwartz,* 66 NY2d 21, 25; *Heller v U.S. Suzuki Motor Corp.,* 64 NY2d 407, 412; 1 Weinberger, New York Products Liability § 17:05). On the cross motions by Nabisco and Mittsch, Supreme Court had before it an affidavit and deposition testimony of Muhammed Mian, supervisor of quality control at the plant where the candy bar was manufactured, an affidavit of John McAnelly, a former Nabisco director of corporate quality control, and deposition testimony

of Harry Lawrence, director of quality assurance for Nabisco's food services division, and Alfred Lenz, comptroller of Mittsch's parent corporation. We agree with Supreme Court that this evidence satisfied the movants' burden of establishing prima facie that the pin was not in the candy bar when it left Nabisco's manufacturing and distribution facilities and Mittsch's warehouse.

Specifically, it was shown that the type of pin which injured plaintiff's infant, designed for attaching sequins to polystyrene decorations, was never used in Nabisco's facility and that all Nabisco manufacturing personnel wore smocks, had their hair covered and were prohibited from wearing jewelry other than wedding rings. Further, the raw materials used in the manufacturing process were carefully tested and inspected for foreign matter. The powdered and liquid ingredients were filtered or screened such that a pin could not pass through with the product. The peanuts, by far the most likely source of solid contaminants, underwent extensive quality control procedures and tests. During the manufacturing process, the peanuts passed over a number of separate magnets and were subjected to visual and electronic inspection, and both the peanuts and the finished product passed through an ICORE metal detector which would have detected and automatically rejected a candy bar containing a metal object 1/10 the size of the subject pin. Contrary to plaintiff's assertion, there is nothing in the evidence presented on the motion which indicates that these quality assurance devices were prone to failure or functioned other than as intended.

Following their manufacture, the wrapped candy bars were placed in sealed cartons of 36 bars and the sealed cartons were in turn placed in sealed corrugated boxes which were shipped to Nabisco's distribution center for subsequent shipment to wholesalers such as Mittsch. Mittsch received and stored the candy bars in the same sealed corrugated boxes. Mittsch would then deliver either the sealed boxes or the smaller sealed 36-bar cartons to retailers. While in Mittsch's control, the cartons were not opened. In the event that a box or carton was broken or otherwise damaged, the product would not be offered for retail sale.

In opposition to the cross motions, plaintiff has come forward with no direct evidence of the means by which the pin came to be imbedded in the candy bar. Further, from the evidence and the logical inferences to be drawn therefrom, we can discern a number of possible sources of the pin, including a manufacturing defect or intentional placement of the pin in

the candy bar while it was in the possession of the manufacturer, wholesaler or retailer. Although, as against a given defendant, plaintiff is not required to " 'positively exclude[ ] every other possible cause of the accident' " *(Ingersoll v Liberty Bank,* 278 NY 1, 7, quoting *Rosenberg v Schwartz,* 260 NY 162, 166; *accord, Schneider v Kings Highway Hosp. Center,* 67 NY2d 743, 744), his proof must "render those other causes sufficiently 'remote' or 'technical' to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence" *(Schneider v Kings Highway Hosp. Center, supra,* at 744). The burden upon plaintiff is to show that "it is more probable than not that the injury was caused by [a given] defendant" *(Kennedy v Peninsula Hosp. Center,* 135 AD2d 788, 792), a burden which has not been met here.

We likewise agree with Supreme Court's dismissal of the complaint against Buckeye. The uncontroverted evidence is that Buckeye owned and operated the Rite-Stop store at the time that plaintiff's infant purchased the candy bar, but that it thereafter leased the business, including all inventory and fixtures and the right to use the trade name Rite-Stop, to Nazario Mei and Caterina Mei (hereinafter Mei) in March 1985. In August 1986, plaintiff's process server went to the store premises, asked who the owner was and, when told that Mei was part-owner, served her with the summons and complaint. Clearly, service upon Mei did not confer personal jurisdiction over Buckeye for she was not and did not represent herself to be an officer, director, agent, cashier or other employee, or a person authorized to receive process on behalf of Buckeye *(see,* CPLR 311 [1]; *McDonald v Ames Supply Co.,* 22 NY2d 111). Moreover, the exercise of reasonable diligence on the part of the process server would have disclosed that Buckeye was the owner of the business at the time of the accident, that ownership had changed in 1985, that Buckeye had no current proprietary interest in the business and that Mei had no legal connection with Buckeye *(see, McDonald v Ames Supply Co., supra,* at 115-116; *cf., Fashion Page v Zurich Ins. Co.,* 50 NY2d 265, 273-274; *de Velutini v Velutini,* 144 AD2d 302, 303-304).

Mahoney, P. J., Casey, Mikoll and Crew III, JJ., concur. Ordered that the order is affirmed, with costs.