OPINION OF THE COURT
Louise Gruner Gans, J.
At the conclusion of the trial of this action for damages for personal injuries based on breach of implied warranty of merchantability and negligence, the jury returned a verdict in favor of plaintiff Vamos and against defendant Coca-Cola Bottling Company of New York, Inc. on each claim. These claims arose when plaintiff drank Diet Coke from a bottle containing two AA batteries. The jury awarded plaintiff $204,000 for past pain and suffering, and $350,000 for future pain and suffering.
Pursuant to CPLR 4404 (a), defendant moved to set aside the jury verdict on liability as not supported by sufficient evidence, and as against the weight of the credible evidence. To determine that a jury verdict is not supported by sufficient evidence as a matter of law, there must be no valid line of reasoning and permissible inferences which could lead rational persons to the conclusion reached by the jury on the basis of the evidence presented at trial. (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; Nicastro v Park, 113 AD2d 129, 132 [2d Dept 1985].) A jury verdict is against the weight of the evidence if the jury could not have reached the verdict on any fair interpretation of the evidence. (Supra, at 134; Yalkut v City of New York, 162 AD2d 185, 188 [1st Dept 1990].)
Defendant essentially argues that there was no evidentiary *390 basis for holding it responsible for the presence of the two AA batteries in the bottle of Diet Coke from which plaintiff drank, and that in the absence of a chemical analysis of the soda remaining in the bottle, no causal relationship could be established between plaintiff’s ingestion of the soda and any injuries he suffered.
Where an item of food or drink intended for human consumption is sold, an implied warranty is imposed on the manufacturer that the item is fit for human consumption and free from any harmful or unwholesome substances, when it leaves the manufacturer’s control. (UCC 2-314; Hohn v South Shore Servs., 141 AD2d 504 [2d Dept 1988]; 86 NY Jur 2d, Products Liability, § 129, at 517; Annotation, Liability for Injury or Death Allegedly Caused by Foreign Substance in Beverage, 90 ALR4th 12, § 2 [a], at 22; see also, England v Sanford, 167 AD2d 147 [1st Dept 1990], affd 78 NY2d 928 [1991].) In order to recover, however, the injured consumer must prove that the product was actually defective or unwholesome, and that the defect or unwholesome condition existed at the time the product left the possession or control of the manufacturer. (Tordella v RJR Nabisco, Inc., 178 AD2d 737 [3d Dept 1991]; Kotiadis v Gristede Bros., 20 AD2d 689, 690 [1st Dept 1964].) In the case of food or drink sold in a sealed container, this burden may be satisfied by proof that there was no opportunity for tampering with the sealed container, or by proof that there was no such tampering in the given case. (See, supra.)
Liability may also be established against a manufacturer of a food product on the basis of negligence, and negligence may be shown by direct as well as circumstantial evidence, including by application of the doctrine of res ipso loquitur. (See, e.g., Mitchell v Coca-Cola Bottling Co., 11 AD2d 579 [3d Dept I960]; Miller v National Bread Co., 247 App Div 88 [4th Dept 1936]; Polvere v Chunky Chocolate Corp., 140 NYS2d 322 [App Term, 1st Dept 1955]; see also, 86 NY Jur 2d, Products Liability, Food & Beverages, §§ 127-135, at 514-525; 2C Warren’s New York Negligence, Foreign Substances in Foods & Beverages, § 88.02 [1] [C], at 506-510.)
A manufacturer is under a duty adequately to prepare, inspect and package its food product, and failure to take these precautions constitutes or may constitute negligence. (Bissonette v National Biscuit Co., 100 F2d 1003, 1004 [2d Cir 1939].) However, as in the case of breach of implied warranty, an *391 injured consumer seeking redress upon a theory of negligence must show that the failure in the preparation, inspection or packaging of the food product occurred before the product left the possession or control of the manufacturer (Polvere v Chunky Chocolate Corp., supra; Halem v Wagner Baking Corp., 16 Misc 2d 840 [City Ct, Kings County 1959]), and that consumption of the product was a proximate cause of the injury for which recovery is sought (Ober v Associated Coca-Cola Bottling Co., 118 AD2d 1016 [3d Dept 1986]; Pompilio v McGeory, 283 App Div 826 [2d Dept 1954]; Miller v National Bread Co., supra, at 89.)
Plaintiffs evidence was sufficient to support the jury’s verdict as to liability based on breach of the implied warranty of merchantability that the Diet Coke that plaintiff Peter Vamos drank was not fit for human consumption as bottled and sealed by defendant Coca-Cola Bottling Company of New York, Inc.
There was sufficient evidence from which the jury could find that plaintiff did find two AA batteries at the bottom of the bottle of Diet Coke from which he drank on September 26, 1989. Not only did plaintiff testify to this fact, but so did an eyewitness, Mr. Schlesinger, who was with plaintiff when he opened the bottle, drank from it and discovered the batteries. Plaintiff preserved and placed in evidence the Diet Coke bottle with the batteries inside. The jury’s acceptance of this evidence was entirely a matter of credibility since defendant offered no evidence to contradict it.
On the question whether the bottle of Diet Coke containing two AA batteries was unfit for human consumption, plaintiff relied on the inherently noxious nature of the batteries. The jury was instructed that it was required to find that the soda containing the batteries was unfit for human consumption as a predicate for its breach of warranty determination, and it was not irrational for the jury to make such a finding.
Although the evolution of the law of implied breach of warranty has been slow and torturous, in those cases where the foreign substance found in food or drink is obviously revolting or noxious, the prevailing view has been that independent proof of its unfitness for human consumption is not required. (Ryan v Progressive Grocery Stores, 255 NY 388 [1931] [pin in bread]; Barrington v Hotel Astor, 184 App Div 317 [1st Dept 1918] [mouse in meat]; Stark v Chock Full O’Nuts, 77 Misc 2d 553 [App Term, 1st Dept 1974] [walnut *392 shell in cheese];[1] Gay v A & P Food Stores, 39 Misc 2d 360 [Civ Ct, Bronx County 1963] [worm in corn]; Trembley v Coca-Cola Bottling Co., 285 App Div 539 [3d Dept 1955] [mouse in Coke]; Mitchell v Coca-Cola Bottling Co., supra [insect in Coke]; Perez v Glens Falls Coca-Cola Bottling Co., 30 AD2d 755 [3d Dept 1968] [thread-like leafy substance in Coke]; Lore v De Simone Bros., 12 Misc 2d 174 [Sup Ct, Richmond County 1958] [bone in salami]; see also, Chysky v Drake Bros. Co., 235 NY 468, 472 [1923] [nail in cake].)
The law has recognized that the concept of unfit food or drink encompasses not only products that are physically unsafe, but also products that are subject to social and psychological taboos. In Barrington v Hotel Astor (supra) the Court held that the presence of a mouse in a kidney saute rendered the food unfit for human consumption, even though from a medical point of view the flesh of the mouse was not dangerous to health when eaten. The Court recognized that the social prejudice against mice as a form of food was sufficient to explain the violent physical reaction of a person finding a cooked mouse on his plate. In Gay v A & P Food Stores (supra) the court noted that the presence of certain substances in food, such as worms, evoked fright and psychic trauma, even if the worms were not actually consumed. Thus, a chemical analysis, while certainly preferable and probative, is not indispensable to establishing that food or drink containing a foreign substance is unfit for human consumption.[2]
On the question whether the batteries were in the bottle of Diet Coke before it left defendant’s bottling plant, or were placed there subsequently, plaintiff and his witness, Mr. Schlesinger, both testified that plaintiff purchased the bottle of Diet Coke at a grocery store, that the bottle was sealed when it was purchased, that they both saw and heard plaintiff break the seal while opening the bottle, and heard the fizz of the escaping carbonation as the seal was broken and the cap unscrewed. The jury could reasonably infer from this testi *393 many, including the description of the fizzing sound when plaintiff broke the seal and opened the bottle, that the bottle had not been tampered with since the time it was carbonated and sealed in defendant’s plant. (See, Haynes v Coca Cola Bottling Co., 39 Ill App 3d 39, 44, 350 NE2d 20, 25 [1976].)
Contrary to defendant’s contention, the testimony of defendant’s quality assurance manager, Thomas Smith, did not require the rejection of this inference. In describing defendant’s manufacturing and bottling process, Mr. Smith testified that if the batteries were in an empty bottle when the bottle was delivered to the plant, it was possible for them to physically remain in the bottle even if the bottle were inverted and washed during the bottling process. Thereafter, Mr. Smith’s testimony was subject to the interpretation that the presence of the batteries in a bottle would not necessarily be detected by a human observer monitoring 400 bottles per minute during the bottling process. (Cf., Trembley v Coca-Cola Bottling Co., supra.)
Thus, there was evidence from which the jury could determine that the batteries discovered by plaintiff in the bottle of Diet Coke from which he was drinking were present in the bottle prior to the time it left defendant’s possession and control, and that the bottle had not been subsequently tampered with. (Supra.)
Turning to the cause of action for negligence, it has long been the rule that a prima facie case of negligence is made out merely upon proof of the presence of the foreign substance when it is shown that the product was sold in a sealed container or other circumstances are present from which it is reasonable to infer that the foreign substance was introduced into the product during the manufacturing process. (See, e.g., Mitchell v Coca-Cola Bottling Co., supra, at 580 [insect in sealed bottle]; Trembley v Coca-Cola Bottling Co., supra [mouse in sealed bottle]; Polvere v Chunky Chocolate Corp., supra [sliver of metal in wrapped candy bar]; Miller v National Bread Co., supra [strands of iron embedded in bread]; Halem v Wagner Baking Corp., supra [stone inside pie]; Cohen v Dugan Bros., 132 Misc 896 [Sup Ct, Bronx County 1928], read on other grounds 227 App Div 714 [1st Dept 1929] [nail concealed in loaf of bread]; 2C Warren’s New York Negligence, Foreign Substances in Foods & Beverages, § 88.02 [1] [C]; see also, Markel v Spencer, 5 AD2d 400 [4th Dept 1958], affd 5 NY2d 958 [1959] [reviews defective food cases].)
*394 As previously discussed, the jury was presented with sufficient evidence to warrant the reasonable inferences that the bottle containing the batteries was sealed at the time plaintiff purchased it, and also that the batteries were present in the sealed bottle when it left defendant’s bottling plant. Defendant, as manufacturer of a product intended for human consumption, owed a duty to plaintiff, as consumer of the product, to take care that the product contained no noxious foreign substance. Because the presence of the batteries in a sealed bottle was evidence from which the jury could infer lack of due care, under the authorities cited above, plaintiff made out a prima facie case of negligence.
It was defendant’s burden to explain the presence of the batteries in its product. (Miller v National Bread Co., supra, at 88; Halem v Wagner Baking Corp., supra, at 844.) Defendant principally relied on the testimony of its quality assurance manager, Thomas Smith, as to the procedure of manufacturing the beverage, and washing, rinsing and filling the bottles to demonstrate that two AA batteries could not have been in the bottle before it was sealed. However, Mr. Smith admitted that this procedure did not eliminate the possibility of human or mechanical failure in the discovery or removal of two AA batteries. Moreover, no evidence was submitted even to suggest that the bottle in question was tampered with after capping and sealing. (Trembley v Coca-Cola Bottling Co., supra, at 540.)
Thus, there was sufficient evidence for the jury to determine that defendant breached its duty of care to plaintiff.
 Proof of proximate cause as an element of liability is required for both a breach of warranty cause of action and a negligence cause of action. (Valenti v Great Atl. & Pac. Tea Co., 207 AD2d 340 [2d Dept 1994]; Tardella v RJR Nabisco, supra, at 737.) The consumer must establish that the consumption of the defective product was a proximate cause of the injury for which recovery is sought. (Krall v Shaker Ridge Country Club, 51 AD2d 481 [3d Dept], lv denied 40 NY2d 802 [1976]; Kotiadis v Gristede Bros., supra, at 690.)
Plaintiff testified that within minutes of drinking the Diet Coke containing the batteries, he did not feel well, had a rapid heartbeat, an upset stomach, was nauseous and sweating. Plaintiff’s former wife, a registered nurse, observed these symptoms, told him to go to a hospital right away and he did so. The next morning he felt worse and vomited, and within *395 another day or two he had diarrhea. The hospital report of plaintiffs visit to the emergency room at Doctor’s Hospital on September 26, 1989, confirms the most immediate of these symptoms, and includes specific references to the batteries in the Diet Coke. The "nursing assessment” describes plaintiff as "anxious; holding nearly empty soda bottle in which there are 2 batteries.” On September 29, 1989, Mr. Vamos visited his doctor and complained of continuing acute stomach upset.
To the extent the jury believed this testimony as to the symptoms plaintiff displayed immediately upon and shortly after ingesting the defective Diet Coke, the jury was presented with a rational and sufficient basis for finding that plaintiff suffered some injury as a result of drinking Diet Coke containing two batteries. (See, e.g., Mitchell v Coca-Cola Bottling Co., supra, at 579-580.) Contrary to defendant’s contention, once the jury by its finding of breach of warranty and negligence had necessarily determined that the presence of the batteries in the Diet Coke rendered it unfit for human consumption, the testimony as to plaintiff’s symptoms alone was sufficient to connect his most immediate illness to the contaminated beverage. (Perez v Glens Falls Coca-Cola Bottling Co., supra.) Where the results of an alleged act of negligence are such that they are within the experience and observation of an ordinary layperson, a jury can draw a conclusion as to causal relationship without the necessity of expert medical testimony. (Meiselman v Crown Hgts. Hosp., 285 NY 389 [1941]; Mitchell v Coca-Cola Bottling Co., supra; Campoli v Grand Union Co., 58 Misc 2d 7 [Rockland County Ct 1968].) Plaintiff’s immediate upset stomach and symptoms of nausea, vomiting and diarrhea are identical to those in the cases in which expert medical testimony was held not necessary to establish causation. (See, e.g., Mitchell v Coca-Cola Bottling Co., supra, at 579 [nausea and vomiting]; Campoli v Grand Union Co., supra, at 12 [nausea]; Perez v Glens Falls Coca-Cola Bottling Co., supra, at 755 [nausea and vomiting].)[3]
Thus, there was sufficient evidence to establish proximate cause at least with respect to some injury suffered by plaintiff. *396 The extent and permanency of that injury relate to the issue of damages and the amounts awarded for past and future pain and suffering. Defendant’s motion directed to liability is denied.
[Portions of opinion omitted for purposes of publication.]

. In Stark v Chock Full O’Nuts (supra) the Appellate Term for the First Department implicitly overruled the contrary approach previously expressed in Copeland v F. W. Woolworth (187 Misc 456 [App Term, 1st Dept 1946]); Willis v Safeway Stores (199 Misc 821 [App Term, 1st Dept 1951]); Kennedy v Pepsi-Cola Metro. Bottling Co. (153 NYS2d 962 [App Term, 1st Dept 1956]).

. A like principle has been adopted in cases involving a cause of action for negligence, where the presence of a noxious or revolting foreign substance in a sealed container is sufficient to warrant an inference of negligence. (See, e.g., Polvere v Chunky Chocolate Corp., supra.)

. Unlike Valenti v Great Atl. & Pac. Tea Co. (supra) where the plaintiff failed to show that her symptoms of nausea, vomiting and stomach distress resulted from her consumption of defective food, here both the emergency room hospital records and Dr. Beinstock’s notes include references to the AA batteries, and the bottle containing the batteries was preserved and produced at trial.