*1083 OPINION OF THE COURT
David M. Manz, J.
Background
This is a personal injury action, wherein the plaintiff alleges that he broke a tooth while eating a double cheeseburger (herein referred to as a hamburger) at a Wendy’s restaurant. Because the plaintiff claims to have swallowed the portion of the hamburger he was injured on, it is unknown whether the object that is alleged to have caused the injury was (1) a piece of bone, gristle or other substance that was “natural” to the ground beef and fat that make up a hamburger patty, (2) a “foreign” object such as a machine part that may have mistakenly gotten into the hamburger patty during its processing, (3) from some other portion of the hamburger such as the bun, cheese or condiment, or (4) not an object at all but some other condition which could have caused the plaintiffs injury such as the hamburger patty still being partially frozen at the time of consumption.
The plaintiff sued the operator of the restaurant, Wendy’s Restaurant of Rochester, Inc., and the manufacturer of the hamburger patty, Moyer Packing Company, Inc., under theories of (1) negligence, and (2) strict products liability. Wendy’s then brought a third-party action for indemnification and negligence against their supplier of the hamburger patty, Kaleel Brothers, Inc., who in turn brought a fourth-party action for indemnification and negligence against their supplier and original defendant, Moyer Packing. The plaintiff then filed an amended complaint alleging breach of express and implied warranties. Wendy’s and Moyer Packing each filed amended answers, which included cross claims against the other. It should be noted that Wendy’s did not file an amended third-party complaint against Kaleel Brothers which incorporated the new implied warranty cause of action.
All parties have either been deposed or have had ample opportunity to depose anyone necessary to pursue or defend these summary judgment motions.
Wendy’s is moving for summary judgment based on the following theories: (1) there was no negligence shown on the part of Wendy’s in how it prepared the hamburger, and (2) the plaintiff cannot prove that the substance that caused his injury was not natural to the hamburger patty, i.e., the plaintiff cannot prove that the hamburger had a foreign object in it or was in anyway unfit for consumption; therefore there is no breach of any implied warranty.
*1084 Moyer Packing joins Wendy’s in its lack of negligence and foreign/natural arguments and adds the argument that the plaintiff cannot prove that the hamburger patty was defective when it left their control at the time of manufacture. The plaintiff has opposed those motions.
Kaleel Brothers has moved for summary judgment dismissing Wendy’s third-party complaint, claiming that the record shows that it was not negligent in its transportation and delivery of the frozen hamburger patties to Wendy’s. Wendy’s has not opposed that motion.
None of the parties have addressed the plaintiff’s express warranty claim, so that cause of action is not discussed by the court.
Findings of the Court
Since each sale of a food product potentially involves three separate claims sounding in negligence, strict products liability and breach of implied warranty (UCC 2-314), one would expect to find volumes of case law on this subject. However, a review of New York law shows that there is surprisingly little case law on the subject of prepared foods causing injuries to restaurant patrons, and there are no cases involving an injury caused by a hamburger.
While all three concepts are somewhat related (PJI 2:120, 2:141, 2:142) and often overlap, this seems to be one of those cases where the nature of the proof and the way in which the fact issues were litigated demonstrate how the causes of action can diverge and how the subtle differences and interrelations of the three theories are important. (Denny v Ford Motor Co., 87 NY2d 248, 262 [1995].)
The negligence standard in a products liability case is pretty straightforward. A defendant will be held liable if a plaintiff can show that it is reasonably certain that the product, when put to normal use, would be dangerous if it were defective. A product is defective if the defendant fails to use reasonable care in designing, making, inspecting and testing a product. (PJI 2:120.) In practice, this turns into an inquiry of whether or not a restaurant owner, and his or her suppliers, used ordinary care to remove from the food, as served, such harmful substance as the consumer would not ordinarily anticipate. (Vitiello v Captain Bill's Rest., 191 AD2d 429 [2d Dept 1993]; Stark v Chock Full O’Nuts, 77 Misc 2d 553, 554 [1974].)
Under New York law, a product defect may be actionable under a strict products liability theory if the product is not rea *1085 sonably safe. Liability is determined by a negligence-like risk/ benefit inquiry that looks at the likelihood that the product will cause injury if not properly made, and the reasonableness of the actions (or inactions) taken by the seller/supplier/manufacturer in ensuring that the product was made safe. (Denny v Ford Motor Co., 87 NY2d 248, 256-259 [1995].)
In contrast, the standard under an implied warranty theory is whether the product was fit for the ordinary purposes for which such goods are used. That inquiry focuses on the reasonable expectations of the consumer for the product when used in the customary, usual and reasonably foreseeable manners, without regard to the feasibility of alternative designs or the manufacturer’s or seller’s reasonableness in marketing it in that unsafe condition. (Id.)
With that overview in mind, the court will first look at the plaintiffs negligence cause of action. If the plaintiff had ordered this hamburger at a lunch counter, and it had not been out of the exclusive possession and control of Wendy’s and its suppliers, the plaintiff would have a good case for entitlement to summary judgment under his res ipsa loquitur theory stated in his bill of particulars. (Harmon v United States Shoe Corp., 262 AD2d 1010 [4th Dept 1999].)
However, since the hamburger did leave the exclusive possession and control of the defendants, the doctrine of res ipsa loquitur cannot be applied. (Radnay v 1036 Park Corp., 17 AD3d 106 [1st Dept 2005].)
The court agrees with the plaintiff that there is an inference of negligence in this case, in that this type of incident should not have occurred absent some negligence on the part of Wendy’s or its suppliers. While Wendy’s has succeeded in rebutting that inference in relation to its cooking of the hamburger patty itself, Wendy’s has brought forth no proof as to what measures it did take, if any, in regard to ensuring that the preformed hamburger patties that it purchases, then resells after cooking, are free from injury-causing substances. For example, does Wendy’s have grinding specifications that it requires its supplier to comply with in order to ensure that its customers will not be exposed to injury-causing substances? (Compare, Goodman v Wenco Foods, Inc., 333 NC 1, 19-20, 423 SE2d 444, 453-454 [1992].)
It should be further noted that the plaintiffs claim involves Wendy’s negligent inspection and preparation of the entire hamburger and not just the hamburger patty. While Wendy’s may *1086 have shown that it was not negligent in the cooking of the hamburger patty itself, it has offered no proof on its lack of negligence in regard to inspecting and preparing the rolls, condiments, utensils or any other process or item that could have been the source of the object claimed by the plaintiff.
These issues become especially important in light of the fact that Wendy’s has no explanation as to how or why the accident report for this incident, that its own manager said was created at the time of the incident, was lost or destroyed. (See, PJI 1:77; McClure v Schindler El. Corp., 9 Misc 3d 1124[A], 2005 NY Slip Op 51775[U] [2005]; Marcano v Calvary Hosp., Inc., 13 AD3d 109 [1st Dept 2004]; Jordan v Doyle, 24 AD3d 107 [1st Dept 2005].)
As a result, the court believes that there are issues of fact with respect to the plaintiffs negligence cause of action which preclude the granting of summary judgment to Wendy’s. (Em-law v Clark, 26 AD3d 790 [4th Dept 2006].) Therefore, Wendy’s motion for summary judgment on the plaintiff’s negligence cause of action is denied.
Additionally, the court finds that Moyer Packing did not meet its burden in the first instance on the issue of negligence. There was no proof put forward by Moyer Packing as to what safeguards were present, if any, during the processing, inspecting and testing of the hamburger patties to guard against potential injury-causing articles being in the product. Therefore, its motion in respect to that cause of action is denied. (See, PJI 2:120; compare, Tardella v RJR Nabisco, 178 AD2d 737, 737-738 [3d Dept 1991].)
As for Kaleel Brothers’ motion to dismiss Wendy’s third-party complaint, a review of the deposition transcripts and affidavits accompanying the motion papers shows that there is no proof that Kaleel Brothers was in any way negligent in its transportation and delivery of the frozen hamburger patties that were manufactured by Moyer Packing and prepared and sold by Wendy’s. The patties were sealed in plastic sleeves until opened at Wendy’s for preparation. Wendy’s employees were instructed to discard any sleeves of hamburgers that appeared to have been tampered with or opened, and there were no allegations or proof that anything of that nature took place in this case. Therefore, that cause of action in Wendy’s third-party complaint is dismissed as to Kaleel Brothers.
However that does not end the inquiry as to Kaleel Brothers. As a supplier in the wholesale food distribution chain, it remains *1087 potentially liable with Wendy’s and Moyer Packing under the plaintiffs strict products liability and breach of warranty causes of action. (McSpedon v Kunz, 271 NY 131, 137 [1936]; Smith v City of New York, 133 AD2d 818, 819 [2d Dept 1987].)
The court disagrees with Kaleel Brothers that Wendy’s third-party complaint only states a negligence cause of action. The wording of Wendy’s third-party complaint, seeking indemnification based on the “culpable conduct” of Kaleel Brothers and having the “ultimate rights and responsibilities’ ’ of the parties “determined by the action,” when “liberally construed,” is sufficient to hold Kaleel Brothers in on the strict products liability and breach of warranty causes of action. (CPLR 3026; Greenwich Excavating & Constr., Inc. v Mark J. MacDonald Plumbing & Heating, Inc., 24 AD3d 1147, 1149 [3d Dept 2005].) Where a warranty or strict products liability claim against a retailer may give rise to an indemnity claim against the supplier and/or the manufacturer, the third-party complaint should not be dismissed. (Guyot v Al Charyn, Inc., 69 AD2d 79, 87 [1st Dept 1979].)
Turning to the strict products liability cause of action, strict products liability has been a recognized cause of action, when dealing with a consumer’s claim of an injury caused by a food product for over 40 years in New York. (Addeo v Metropolitan Bottling Co., 39 Misc 2d 474 [1963], affd 20 AD2d 967 [1st Dept 1964]; Vamos v Coca-Cola Bottling Co. of N.Y., 165 Misc 2d 388 [1995].)
While the concept of strict products liability has as its roots the law of implied warranty, and shares with it many of the same principles (Greenberg v Lorenz, 9 NY2d 195 [1961]; Randy Knitwear v American Cyanamid Co., 11 NY2d 5 [1962]; Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443 [1965]; Codling v Paglia, 32 NY2d 330 [1973]), the focus of the inquires in determining whether a cause of action exists is totally different. (Denny v Ford Motor Co., 87 NY2d 248, 256-259 [1995].)
As in the negligence cause of action, a strict products liability action focuses on the actions of the defendants, here, either in what they did or failed to do in relation to the manufacture, transport, preparation and sale of the hamburger.
In order to establish liability, a plaintiff is required to prove (1) that the product in question was not fit to be used as intended, (2) that the defect existed at the time that it left the defendants’ hands, (3) that the plaintiff used the product as it *1088 was intended to be used, (4) that the plaintiff would not have been able to discover any defect in the product through the exercise of ordinary care, and (5) that the defect was a substantial factor in causing the accident. (Winckel v Atlantic Rentals & Sales, 159 AD2d 124, 126 [2d Dept 1990]; Tardella v RJR Nabisco, 178 AD2d 737, 737-738 [3d Dept 1991].)
It is well established that proof of necessary facts in a strict products liability case, as in an implied warranty case, may be circumstantial. A plaintiff is not required to prove the specific defect. In order to proceed in the absence of evidence identifying a specific product flaw, a plaintiff must (1) prove that the product did not perform as intended (in the context of a strict products liability action concerning food, the court assumes that a product “performs” as intended when it is consumed without injury to the consumer, absent any culpable conduct on his or her part or some other third party not involved in the chain of manufacture, distribution or sale), and (2) exclude all other causes for the product’s failure that are not attributable to defendants. (PJI 2:141; Saunders v Farm Fans, div. of ffi Corp., 24 AD3d 1173, 1175-1176 [4th Dept 2005]; Winckel v Atlantic Rentals & Sales, 159 AD2d 124, 126 [2d Dept 1990].)
The plaintiff has satisfied his burden. Since the product did not “perform” as intended and since there was a solid “chain of custody” for the hamburger patties from the time they were manufactured to the time they were served to the plaintiff, the only other cause that is plausible is that the plaintiff himself interjected the object into the hamburger or simply faked or contrived the whole incident. However, there were no allegations or proof that anything of that nature took place in this case.
Additionally, Moyer Packing claims that the plaintiff cannot prove that the hamburger patty was defective when it left its control at the time of manufacture. The court disagrees. The same proof that established Kaleel Brothers’ lack of negligence satisfies the plaintiffs burden of proof on this issue. The patties were sealed in plastic sleeves until opened at Wendy’s for preparation. Wendy’s employees were instructed to discard any sleeves of hamburgers that appeared to have been tampered with or opened, and there were no allegations or proof that anything of that nature took place in this case. (Vamos v Coca-Cola Bottling Co. of N.Y., 165 Misc 2d 388, 390 [1995].)
Therefore, Wendy’s and Moyer Packing’s motions for summary judgment on the plaintiffs strict products liability cause of action are also denied.
*1089 Finally, as to the plaintiffs implied warranty cause of action, for almost a 100 years there has been an implied warranty accompanying all sales by a dealer of food articles for immediate use, that the food is fit for human consumption. (Race v Krum, 222 NY 410 [1918]; Rinaldi v Mohican Co., 225 NY 70 [1918].)
The consequences to the consumer resulting from consumption of articles of food sold for immediate use may be so disastrous that an obligation is placed upon the seller to see to it, at his peril, that the articles sold are fit for the purpose for which they are intended. The rule is an onerous one, but public policy as well as the public health demand such obligation should be imposed. The seller has an opportunity which the purchaser does not have of determining whether the article is in the proper condition to be immediately consumed. (Grossman v Hotel Aster, 166 Misc 80, 83 [1937].)
In this case, the plaintiff claims that he consumed the article that caused his injury. So he cannot prove definitively what the article was. By inference, the article in question could have been a piece of bone, gristle or other substance that was “natural” to the ground beef and fat that make up a hamburger patty.
This becomes an issue because under the doctrine of implied warranty a defendant will be held liable if a product is not reasonably fit to be used for its ordinary (intended) purpose. (UCC 2-314; PJI 2:142.) However, “reasonably fit” is not defined in the statute and there is no formal test or guidelines put forth in the statute to determine how reasonably fit should be determined. (UCC 2-314; PJI 2:142.)
Wendy’s urges the court to dismiss the action, based on the fact that the plaintiff cannot prove that the article that caused the injury was a foreign object. They argue that for a product to be deemed reasonably unfit, the injury-causing substance has to be foreign to the product and not a natural component of the product itself. Without proof that the injury-causing article was foreign, the plaintiff has no cause of action. This is known as the foreign/natural distinction or test.
This argument is based on the concept that there are certain “natural” hazards that occur in food which a consumer knows can be present in the food and must watch out for in order to protect him or herself. Such natural hazards do not, therefore, make the product unfit. In its crudest form the argument is basically that you can’t sue for finding a bone in your steak when you order a T-bone steak. (Mix v Ingersoll Candy Co., 6 Cal 2d 674, 59 P2d 144 [1936]; Ex parte Morrison’s Cafeteria of Montgomery, Inc., 431 So 2d 975, 978 [Ala 1983].)
*1090 In its more reasonable form, the argument is that since everyone knows that there are bones in fish, when you order a fish dinner you have to watch out for bones. The mere presence of an injury-causing bone in a piece of fish cannot serve as the basis for claim by a party injured while eating the fish, because there is nothing “wrong” with the fish. A piece of fish with bones in it is fit for its intended purpose. (Vitiello v Captain Bill’s Rest., 191 AD2d 429 [2d Dept 1993].)
However, the court does not agree with the defendants that the foreign/natural test is the proper test or that a finding that the substance that caused the plaintiffs injury in this case was “natural” would act as a complete bar to the plaintiffs cause of action.
Wendy’s cites to Frier v Laube’s Old Spain (265 App Div 402 [4th Dept 1943]) in support of its position that the foreign/ natural test is the controlling test in this court.
First, it is this court’s reading of Frier that the case’s holding was based on the fact that there was no proof in the record that the plaintiff was injured by anything other than choking on the food item itself. There was no proof of anything wrong with the food.
Second, while the word foreign was used in the opinion (it should be noted that the plaintiff pleaded that there was a foreign substance in the food), there was no discussion of a formal foreign/natural test which would have disqualified the plaintiff as a matter of law. The “formal” foreign/natural test seems to have made its premiere in New York in 1958, some 15 years after Frier was decided, so it is doubtful that it served as the basis for that court’s decision. (Lore v De Simone Bros., 12 Misc 2d 174 [1958].) The test came from the Supreme Court of California in the case of Mix v Ingersoll Candy Co. (6 Cal 2d 674, 59 P2d 144 [1936]).
A close reading of Mix reveals two interesting points. First, the Mix court used the reasonable expectation test in reaching its distinction. It simply found that a consumer who eats a meat dish ought to anticipate and be on his guard against the presence of bones. Next, a review of the authorities cited in Mix shows that the court relied heavily on New York law in deciding the issue of implied warranty (Temple v Keeler, 238 NY 344 [1924]; Rinaldi v Mohican Co., 225 NY 70 [1918]; Race v Krum, 222 NY 410 [1918]). As cited above, these cases would serve as a basis for the plaintiffs claim, not as a bar to it. (It should be noted that the Supreme Court of California has since rejected *1091 the foreign/natural distinction as put forward in Mix in Mexicali Rose v Superior Ct, 1 Cal 4th 617, 822 P2d 1292 [1992]).
Third, if the Frier court was using the “informal” foreign/ natural distinction that appears in earlier New York cases, that distinction would not act as a bar to the plaintiffs cause of action. That distinction comes from courts having to decide whether the provisions of Agriculture and Markets Law former § 199 (now § 200) dealing with adulterated foods, were violated under the old Personal Property Law § 96, which was the precursor to UCC 2-314. In order for the food product to be deemed “adulterated” under Agriculture and Markets Law former § 199 (5), a plaintiff had to show that there was an added deleterious ingredient in the food. (Gimenez v Great Atl. & Pac. Tea Co., 264 NY 390, 395 [1934].)
But more important for our discussion, the Court in Gimenez found that the injury-causing substance was not an added foreign substance, yet it found that there was a breach of implied warranty. So under Gimenez, the lack of a foreign substance is not a bar to an implied warranty cause of action. Since the Frier court cited to Gimenez (265 App Div at 404), and was therefore actually aware of the holding in that case, it is unlikely that the Court was trying to break from the Court of Appeals and formulate new law without opinion or citation to any authority.
Based on the Gimenez decision, New York courts had consistently held that a breach of implied warranty claim can be brought as a result of a deleterious or foreign substance contained in the food. (Varone v Coloreo, 22 Misc 2d 1085, 1088 [I960]; O’Hare v Petersen, 174 Misc 481, 485 [1940]; Weiner v Mager & Throne, Inc., 167 Misc 338, 340-341 [1938].) That line of cases seems to end, coincidently, around the time that the relevant portions of the Personal Property Law were repealed by the Uniform Commercial Code in 1964. (UCC 13-102 [eff Sept. 27, 1964].)
But it is all somewhat moot, since any holding in Frier, or any other lower court, which is based on any test that is contrary to the rules set forth in the Court of Appeals decision in Denny v Ford Motor Co. (87 NY2d 248, 256-259 [1995]) would no longer be good law.
However, even if the foreign/natural test somehow survived New York’s adoption of the Uniform Commercial Code and the use of the reasonable expectation test put forth in Denny, its application would not help Wendy’s and would in fact call for *1092 the granting of summary judgment to the plaintiff based on the facts of this case.
If, as Wendy’s argues, it could be shown that the plaintiff was injured on a piece of bone or gristle, this is not a situation where the ingredient or substance causing the injury is natural to the product or where a consumer of the product might be expected to anticipate the presence of the substance in the food. It cannot be said that the fragment of bone which may have been the cause of plaintiffs injuries is natural to a product composed of ground and processed meat and fat, or that a consumer who eats such a product ought to anticipate and be on his guard against the presence of bone. (Lore v De Simone Bros., 12 Misc 2d 174 [1958]; see, Varone v Calarco, 22 Misc 2d 1085 [I960].)
Regardless of how courts have interpreted the foreign/natural distinction, the court agrees with the plaintiff that on a claim of implied warranty, the test in New York is now the reasonable expectation test. (Langiulli v Bumble Bee Seafood, 159 Misc 2d 450, 451 [1993]; Hohn v South Shore Serv. Inc., 141 AD2d 504, 505 [2d Dept 1988]; Vitiello v Captain Bill’s Rest., 191 AD2d 429 [2d Dept 1993]; Stark v Chock Full O’Nuts, 77 Misc 2d 553, 554 [1974].)
We know from the Court of Appeals in Denny (87 NY2d 248, 256-259 [1995]) that the focus of the inquiry is on the reasonable expectations of the consumer, without regard to negligence principles; the question then becomes how does the court apply the reasonable expectation test in the context of a motion for summary judgment? This court has been unable to find any test or guidelines put forth for a court to use on a summary judgment motion, or for a jury to use as the ultimate finder of fact, and will now attempt to formulate some guidelines.
One of the advantages of the reasonable expectation test is that it is much more flexible than any other test, because it looks at other factors besides the naturalness or origin of the injury-causing object. Therefore, it can be used in a situation like this where the origin of the injury-causing object is unknown. However, one of its downfalls in summary judgment situations is that it is much more expansive in the scope of its review.
To be clear, just because the court has refused to use any bright line foreign/natural test does not mean that the distinction between a foreign or natural object has become irrelevant to the discussion of this case as a whole. On the contrary, the origin of the injury-causing object could play an important role *1093 in determining whether the plaintiff should have expected to find it in his or her food. Yet, it should not be the sole determinant. There are many situations in which the origin of the offensive object is no more decisive than any other factor in determining the plaintiffs reasonable expectations.
Categorizing a substance as foreign or natural may have some importance in determining the degree of negligence of the processor of food, but it is not determinative of what is unfit or harmful in fact for human consumption. A bone natural to the meat can cause as much harm as a foreign substance such as a nut or a bolt. All are hazardous to teeth and likely to cause injury. (Otera, A Bone to Pick with Mexicali Rose v. Superior Court: Liability of California Restaurants for Injuries Caused by Substances in Food, 27 Loy LA L Rev 397, 418-420 [1993].)
But equally as important as not using the foreign/natural test, the court cannot simply state that it is adopting a reasonable expectation test, then proceed to do a traditional negligence review of the facts. The focus should not become an inquiry of whether or not a restaurant owner used ordinary care to remove from the food, as served, such harmful substance as the consumer would not ordinarily anticipate. This is the standard for a negligence cause of action, not implied warranty. (Vitiello v Captain Bill’s Rest., 191 AD2d 429 [2d Dept 1993]; Stark v Chock Full O’Nuts, 77 Misc 2d 553, 554 [1974].)
Thus, both the nature of the object and how the food was prepared should merely be factors, and not the sole determining factors in considering the broader question of whether the plaintiff should have expected to find the item in his or her food.
By not limiting the focus to these two issues, the inquiry will be kept from reverting to the old foreign/natural test and/or from having the matter being an implied warranty action in name only, and in reality being a negligence action with all of the focus being on the defendant’s preparation of the food. (See, Vitiello v Captain Bill’s Rest., 191 AD2d 429 [2d Dept 1993]; Stark v Chock Full O’Nuts, 77 Misc 2d 553, 554 [1974].)
But in order to attempt to determine the reasonable expectations of what a consumer expects to find in his or her food the court has to examine such factors as (1) the nature or size of the object, or both, (2) the type of food involved, (3) the way in which the food was inspected, processed and pre *1094 pared, (4) the type of establishment where the food was purchased, (5) whether the food needed further preparation before consumption, (6) what type of opportunity the consumer had to protect himself or herself from the alleged defect (i.e., how the item is traditionally consumed), and (7) what steps, if any, must a reasonable consumer take to inspect his or her food prior to consumption. (Mitchell v BBB Servs. Co., Inc., 261 Ga App 240, 242-243, 582 SE2d 470, 471-472 [2003]; Goodman v Wenco Foods, Inc., 333 NC 1, 15-18, 423 SE2d 444, 450-453 [1992].)
Having put forth the factors to be considered, it is difficult for the court to conceive of how a consumer might guard against the injury complained of here, short of removing the hamburger from its bun, breaking it apart and inspecting its small components. Certainly Wendy’s or its suppliers do not expect a consumer to go to such lengths, especially since a hamburger is meant to be eaten out of hand, without cutting, slicing, or even the use of a fork or knife. If one reasonably expects to find an item in his or her food then he or she guards against being injured by watching out for that item. But when one eats a hamburger he does not nibble his or her way along hunting for bones because he or she is not reasonably expecting one in his food. (Goodman v Wenco Foods, Inc., 333 NC 1, 16, 423 SE2d 444, 451 [1992].)
Since a consumer cannot reasonably guard against this type of incident, short of not eating a hamburger in the first place, it is hard for the court to find how any consumer could reasonably expect to encounter such an object in a hamburger, which would prevent the granting of summary judgment to the plaintiff on this issue. However, the court knows that if the same question were put to some of our fair city’s more senior shoppers at Buffalo’s Broadway Market, the answer may be somewhat different.
Therefore, with all of the above factors to consider, it is the holding of this court that when a consumer is injured by an object in a piece of food, whether its origin is foreign, natural or unknown, the question of whether that food has been rendered unfit for consumption (i.e., should a consumer have reasonably expected the object to be in the food), except in the rarest of cases, should not be decided as a matter of law. These are all proper considerations for a jury, not a judge. (Pronti v DML of Elmira, 103 AD2d 916, 917 [3d Dept 1984].)
*1095 Therefore, the fact that the plaintiff cannot prove that the substance that caused his injury was not “foreign” to the hamburger patty is an insufficient basis to grant summary judgment to Wendy’s and Moyer Packing on the plaintiffs implied warranty cause of action and those motions are also denied.
The court realizes that the adoption of the reasonable expectation standard puts Wendy’s in a precarious position of possibly having to argue that a customer should reasonably expect to find an object in his or her hamburgers that is large enough to break a tooth. But maybe that is why there were no reported cases in New York involving a plaintiff being injured on a hamburger.